

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

8-25-1999

# Warren G. ex rel. Tom G. v. Cumberland County School Dist.

Precedential or Non-Precedential:

Docket 98-7512, 98-7517

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

## Recommended Citation

"Warren G. ex rel. Tom G. v. Cumberland County School Dist." (1999). *1999 Decisions.* Paper 237.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/237

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed August 25, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 98-7512
No. 98-7517

WARREN G.; GRANT G., by and through their
parents and nearest friends,
Tom G. and Louisa G.,
        Appellants in 98-7512

v.

CUMBERLAND COUNTY SCHOOL DISTRICT,
        Appellant in 98-7517

On Appeal from the United States District Court
for the Middle District of Pennsylvania
D.C. Civ. No. 97-cv-00946
(Honorable Sylvia H. Rambo)

Argued June 2, 1999

Before: SCIRICA, McKEE, Circuit Judges, and
SCHWARZER,* District Judge

(Filed August 25, 1999)

_____

*The Honorable William W Schwarzer, Senior United States District
Judge for the Northern District of California, sitting by designation.

VIVIAN B. NAREHOOD,
 ESQUIRE (ARGUED)
Gibbel, Kraybill & Hess
41 East Orange Street
Lancaster, PA 17602

Attorney for Warren G.
and Grant G., Appellants/
Cross-Appellees

JANE M. WILLIAMS, ESQUIRE
 (ARGUED)
Sweet, Stevens, Tucker & Katz, LLP
116 East Court Street P.O. Box 150
Doylestown, PA 18901

Attorney for Cumberland County
School District, Appellee/Cross-
Appellant

OPINION OF THE COURT

SCHWARZER, District Judge

Plaintiffs Grant and Warren, through their parents, brought this action against the Cumberland Valley School District (District) under the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. SS 1400-1491o (1994), to recover reimbursement of private school tuition and the cost of independent educational evaluations (IEEs) of plaintiffs. The District Court, on cross-motions for summary judgment, affirmed the decisions of a Special Education Appeals Panel (Panel) granting the request for tuition reimbursement but limiting the amount on equitable grounds, and reversed the decision denying reimbursement for the cost of the IEEs. Plaintiffs appeal and the District cross-appeals. We hold that the IDEA did not permit reduction of tuition reimbursement to which plaintiffs are otherwise entitled based on an assessment of the relative reasonableness of the parties' conduct. We further hold that plaintiffs are entitled to reimbursement for the IEEs, the District having failed to establish that its evaluations were appropriate.

2

FACTS AND PROCEDURAL BACKGROUND

Warren and Grant are both gifted students with learning disabilities. For several years they attended public school in the District, which provided them with individual educational programs (IEPs) as required by the IDEA. In the fall of 1993, their parents became dissatisfied with their sons' IEPs and obtained IEEs of them. From November 1993 until May 1994, the parents were in discussions with the District over the design of appropriate IEPs for their sons but failed to reach agreement. At the end of the 1993-94 school year, the District sent the parents revised IEPs for both Warren and Grant together with a notice of parents' rights. The parents responded in August 1994, by advising that they were withdrawing Warren and Grant from the District and enrolling them in the Janus School ("Janus"), a private school for students with learning disabilities. On September 9, 1994, the District notified the parents of their right to have the children educated at Janus at their own expense but warned that if they wished to challenge the District's IEPs and receive tuition reimbursement, they would have to request a due process hearing.

The parents did not make such a request for tuition reimbursement or, in the alternative, for a hearing, until December 1995, sixteen months later. The District rejected the request for reimbursement, but offered to develop updated IEPs and agreed to a hearing. Hearings for both children were held between July and October 1996. The hearing officer issued separate opinions, finding the District's proposed IEPs appropriate and denying the request for reimbursement for tuition and for the cost of the IEEs. The parents appealed to the Panel, which reversed. In separate opinions, the Panel found both Grant's and Warren's IEPs inappropriate. With respect to Grant, it found that the District was liable prospectively for tuition reimbursement for violating its duty to provide a "defensible IEP" but reduced its liability by the equivalent of one semester (the last semester of the 1995-96 school year) because of the unreasonableness of the parents' demands. With respect to Warren, the Panel also held that because the District had violated its "clear duty to provide a

3

reasonably defensible proposed IEP" it was liable prospectively for tuition reimbursement but reduced its liability (by deferring reimbursement until the second semester of the 1996-97 school year) by the equivalent of one year because of the "excessiveness of the parents' conduct." The Panel also denied reimbursement for the IEEs on equitable grounds, both because the parents had not expressed disagreement with the District's IEE and because they had waited for over two and one-half years to seek reimbursement.

Plaintiffs appealed to the District Court. The court, on cross-motions for summary judgment, affirmed the Panel, except with respect to the IEE reimbursement. Plaintiffs now appeal from the District Court's judgment and the District cross-appeals contending that all tuition reimbursement should be denied because Janus was not a proper private placement and that IEE reimbursement should be denied because the school district's evaluations were appropriate.

The District Court had subject matter jurisdiction under former 20 U.S.C. S 1415(e)(2) (1994) (amended in 1997 as 20 U.S.C. S 1415(I)(2)(A)).1 We have appellate jurisdiction pursuant to 28 U.S.C. S 1291 (1994), and we"exercise plenary review over the district court's conclusions of law and review its findings of fact for clear error." See Carlisle Area Sch. v. Scott P., 62 F.3d 520, 526 (3d Cir. 1995).2

DISCUSSION

I. REIMBURSEMENT FOR PRIVATE SCHOOL TUITION

A. Proper Private Placement

The District contends that Janus is not a proper placement because it is not an approved private school in

_____

1. The IDEA was amended in 1997, resulting in a renumbering of its sections. See Individuals with Disabilities Education Act Amendments of 1997, Pub. L. No. 105-117, 111 Stat. 37 (hereinafter 1997 Amendments). We discuss the effect of the 1997 Amendments below.

2. We have considered and deny the District's motion to file a supplemental appendix.

4

Pennsylvania and does not comply with Pennsylvania's licensure requirements or the state's educational standards. Florence County School District Four v. Carter, 510 U.S. 7, 14 (1993), disposes of the District's contention. There, the Court held that a private school's failure to meet state education standards is not a bar to reimbursement under the IDEA. Insofar as the District's argument is based on particular alleged deficiencies, in the absence of any showing of clear error, we defer to the Panel's and the District Court's finding that Janus is an appropriate placement.

The District further contends that because only students with learning disabilities attend Janus, it did not provide the least restrictive environment--that is, an environment where disabled and nondisabled children are integrated to the maximum extent possible--as required by the IDEA. See 20 U.S.C. S 1412(5)(B) (1994) (now 20 U.S.C. S 1412(a)(5)(A)). The District Court held, relying on Cleveland Heights-University Heights City School District v. Boss, 144 F.3d 391, 399-400 (6th Cir. 1998), that Janus's failure to provide Grant and Warren with opportunities to interact with nondisabled students did not render it an inappropriate placement, reasoning that imposition of the least-restrictive environment requirement on private placements would vitiate the parental right of unilateral withdrawal. Subsequently, in Ridgewood Board of Education v. N.E., this court reached the same conclusion, holding that when the public school fails to provide an appropriate IEP, tuition reimbursement may be made to students placed in private schools that specialize in educating students with learning disabilities. See 172 F.3d at 245, 249 (citing Boss and other authorities). The least-restrictive environment requirement does not bar reimbursement because "the IDEA requires that disabled students be educated in the least restrictive appropriate educational environment." Id. An appropriate private placement is not disqualified because it is a more restrictive environment than that of the public placement. See id. Thus, the test for the parents' private placement is that it is appropriate, and not that it is perfect. See id. at 249 n.8. "Since the court was presented with only one option, it was not required to locate another school that would satisfy the

5

least restrictive alternative requirement based on the entire pool of schools available, but rather was required simply to determine whether that one available choice would provide an appropriate education for [the student]." Board of Educ. v. Illinois State Bd. of Educ., 41 F.3d 1162, 1168 (7th Cir. 1994). Both the Panel and the District Court having found that the Janus School offered an appropriate education for Grant and Warren, the parents are not barred from tuition reimbursement.

B. Reductions of Tuition Reimbursement

   1. Tuition Prior to Parents' Request for Due Process Hearing

Relying on Bernardsville Board of Education v. J.H., 42 F.3d 149 (1994), the District Court, affirming the Panel, rejected plaintiffs' claim for tuition reimbursement for the sixteen- month period during which Grant and Warren were enrolled at Janus prior to the parents' request for a due process hearing in December 1995. Plaintiffs did not challenge this ruling in their brief on appeal butfirst raised the issue at oral argument. " `An issue is waived unless a party raises it in its opening brief . . . .' " See Reform Party v. Allegheny County Dept. of Elections, 174 F.3d 305, 316 n.11 (3d Cir. 1999) (quoting Laborers' Int'l Union v. Foster Wheeler Corp., 26 F.3d 375, 398 (3d Cir. 1994)). Even if we were to consider this claim, we would be bound by our decision in Bernardsville holding that when parents unilaterally withdraw their children from public school, absent mitigating circumstances, they are not entitled to reimbursement for private school tuition until they request review proceedings. See Bernardsville, 42 F.3d at 156–58 & n.14 ("[T]he right of review contains a corresponding parental duty to unequivocally place in issue the appropriateness of an IEP. This is accomplished through the initiation of review proceedings within a reasonable time of the unilateral placement for which reimbursement is sought."). Bernardsville does not establish a one–year grace period as plaintiffs argue. In Bernardsville, parents who waited over two years to initiate proceedings were denied reimbursement for the entire two–year period and were not simply excused for their first year of inaction. See

6

id. at 158 ("We think more than two years, indeed, more than one year, without mitigating excuse, is an unreasonable delay."). In the absence of any mitigating excuse, the District Court appropriately denied tuition reimbursement for the period preceding the parents' request for a due process hearing.

### 2. Tuition Reduction Because of Parents' Unreasonable Conduct

The Panel reduced the District's liability for tuition reimbursement on equitable grounds by one semester in the case of Grant and two semesters in the case of Warren. In its decision regarding Grant, the Panel, afterfinding that the District had failed to comply with the IDEA, determined that it nevertheless "merits high marks with regard to the procedure and, in terms of parental participation, patience." As for the parents, it faulted them for making unrealistic and unreasonable demands, providing inaccurate information, contradicting themselves and making false accusations against the District. After acknowledging the need for and right to vigorous parental representation of their children, it determined that "the cumulative extent has the equitable effect of reducing the requested reimbursement by the equivalent of one semester." In the case of Warren, the Panel, after finding that the IEP was insufficient, determined:

> [T]he residual excessiveness of the parents' conduct, after due latitude for vigorous parental participation and advocacy, combined with the marginal inappropriateness of the District's proposed program and the marginal appropriateness of the private school program to have the equitable effect of reducing the requested reimbursement by the equivalent of one year.

The District Court accepted the Panel's findings and conclusions. It held that the Panel properly considered the parents' conduct in its equitable analysis, reasoning that the IDEA does not provide an absolute right to reimbursement but, rather, authorizes courts to fashion "appropriate" relief. It concluded:

7

> To reward the parents' uncooperative and
> unreasonable conduct in the face of good faith
> attempts by the District would little serve IDEA's
> purpose of providing disabled children with a free
> appropriate public education through the cooperation
> of school officials and parents.

The IDEA (both as it stood at the time of the events in question and under the 1997 Amendments) "authorizes federal assistance to states and localities for educational programs which confer an educational benefit on disabled students. The [District] receives an allocation of funds under this Act and, thus, incurs the responsibility to confer an educational benefit on learning disabled students enrolled in a public school within its jurisdiction." Bernardsville, 42 F.3d at 151; see also 20 U.S.C. SS 1411, 1412(1) (1994) (requiring that "[t]he State has in effect a policy that assures all handicapped children the right to a free appropriate public education"); Burlington Sch. Comm. v. Massachusetts Dept. of Educ., 471 U.S. 359, 368 (1985) (stating that "the Act provides federal money to state and local educational agencies that undertake to implement the substantive and procedural requirements of the Act"). State and local educational agencies are required to establish and maintain procedures to assure that handicapped children and their parents are guaranteed procedural safeguards with respect to the provision of free appropriate public education. See 20 U.S.C. S 1415(a) (1994). Aggrieved parties are entitled to bring a civil action in state or federal courts which "shall grant such relief as the court determines is appropriate." See 20 U.S.C. S 1415(e)(2) (1994).

In Burlington the Court considered the scope of the district court's remedial power under S 1415(e)(2) in the context of affirming the right of parents to tuition reimbursement pending the due process hearing on a proposed IEP. Referring to the statutory text, the Court stated:

> The ordinary meaning of these words confers broad
> discretion on the court. The type of relief is not further
> specified, except that it must be "appropriate." Absent
> other reference, the only possible interpretation is that

the relief is to be "appropriate" in light of the purpose of the Act.

Burlington, 471 U.S. at 369. The Court went on to hold that a parental violation of S 1415(e)(3), which requires a child to remain in its current educational placement during review proceedings, does not constitute a waiver of reimbursement. It said that if S 1415(e)(3) were to be interpreted to cut off parental rights to reimbursement, the principal purpose of the Act would in many cases be defeated in the same way as if reimbursement were never available. See id. at 372. It added that"[t]he Act was intended to give handicapped children both an appropriate education and a free one; it should not be interpreted to defeat one or the other of those objectives." Id.

Although the facts in Burlington are distinguishable, the situation presented is analogous. The conduct of parents should not be permitted to defeat the purpose of the Act, and the remedial power of the court should not be interpreted to further such an end. The same generous view of the IDEA's broad remedial purpose is reflected in the Court's subsequent decision in Florence County v. Carter, which held that a private school's failure to meet state education standards is not a bar to reimbursement. Carter indicates that the amount of tuition reimbursement may be limited "if the Court determines that the cost of the private education was unreasonable," Carter, 510 U.S. at 16; we do not read it as sanctioning a denial of an arbitrary fraction of reimbursement for a portion of the school year where the IEPs are found deficient but the parents' conduct was unreasonable. Here it is undisputed that the District failed to come forward with appropriate IEPs and there is no finding that the parents' conduct obstructed its ability to do so. In those circumstances it makes little sense to determine the amount of reimbursement not with reference to what is required by the IDEA to provide an appropriate education but by comparing the conduct of the school district with that of the parents, as was done here.

We reject the approach taken by the Panel and the District Court for the further reason that it flies into the face of the policy underlying the IDEA emphasizing parent involvement. By " `emphasiz[ing] the process of parent and

9

child involvement and . . . provid[ing] a written record of reasonable expectations, the [Senate] Committee intend[ed] to clarify that such individualized planning conferences are a way to provide parent involvement and protection to assure that appropriate services are provided to a handicapped child.' " Board of Educ. v. Rowley, 458 U.S. 176, 208-09 (1982) (quoting S. Rep. No. 94-168 at 11-12 (1975), reprinted in 1975 U.S.C.C.A.N. 1425, 1435-36); see also Burlington, 471 U.S. at 368 ("In several places, the Act emphasizes the participation of the parents in developing the child's educational program and assessing its effectiveness."). Vigorous advocacy is an anticipated by-product of a policy encouraging parental involvement. See Rowley, 458 U.S. at 209 (discussing Congress' intent to protect children through parental involvement and commenting that "parents . . . will not lack ardor in seeking to ensure that handicapped children receive all of the benefits to which they are entitled by the Act"). The rulings in this case undermine that policy by placing parents at risk that their advocacy may be found extreme at the cost of full reimbursement. Accordingly, we will reverse the judgment insofar it denies full reimbursement for Grant's and Warren's tuition commencing with the second semester of the 1995-96 school year.3

_____

3. As noted above, Congress amended the IDEA in 1997 by providing that "[t]he cost of reimbursement . . . may be reduced or denied –– upon a judicial finding of unreasonableness with respect to actions taken by the parents." 20 U.S.C.A. S 1412(a)(10)(C)(iii)(III) (West Supp. 1999). The
District Court held that the amendment did not apply because all of the events in this case occurred prior to the effective date of the amendment, June 4, 1997, and neither party has challenged that ruling. We agree. The court's ruling was consistent with the position taken by all other courts of appeals that have addressed the issue. See Peter v. Wedl, 155 F.3d 992, 998-99 (8th Cir. 1998); Muller v. Committee on Special Educ., 145 F.3d 95, 97 n.1 (2d Cir. 1998); Sellers v. School Bd., 141 F.3d 524, 526 n.2 (4th Cir.), cert. denied, 119 S. Ct. 168 (1998); Tucker v. Calloway
County Bd. of Educ., 136 F.3d 495, 501 (6th Cir. 1998); Fowler v. Unified Sch. Dist. No. 259, 128 F.3d 1431, 1436 (10th Cir. 1997); Heather S. v. Wisconsin, 125 F.3d 1045, 1047 n.1 (7th Cir. 1997); Cypress-Fairbanks Indep. Sch. Dist. v. Michael F., 118 F.3d 245, 247 n.1 (5th Cir. 1997).

10

## II. REIMBURSEMENT FOR INDEPENDENT EDUCATIONAL EVALUATIONS

In its cross-appeal, the District contends that the District Court erred in awarding reimbursement to the parents for the 1993 IEEs of Grant and Warren.[4]

At the due process hearings, the hearing officer found that the evaluations of Grant and Warren obtained by the District in 1992 were appropriate and, therefore, denied reimbursement to the parents. On appeal the Panel evaluated the equities. With respect to Grant's IEE, the Panel found that the District did rely on the IEE results in reconsidering Grant's IEP, but because of doubts concerning the evaluator's impartiality, the parents' failure to express disagreement with the District's evaluation and their delay in requesting reimbursement, law and equity preponderated in favor of denying reimbursement. With respect to Warren's IEE, the Panel determined that its "apparent value in terms of triggering the District's initial eligibility reevaluation and being incorporated in the final CER-IEP are forfeited based on" the parents' failure to express disagreement with the District's evaluations and their delay in seeking reimbursement.

The District Court rejected the equitable balancing analysis on the ground that a parent has an unqualified right under the IDEA's implementing regulations to reimbursement unless the District's evaluation is found to be appropriate:

> A parent has the right to an independent educational evaluation at public expense if the parent disagrees with an evaluation obtained by the public agency. However, the public agency may initiate a hearing . . . to show that its evaluation is appropriate. If thefinal decision is that the evaluation is appropriate, the

_____

4. Although the parents obtained additional IEEs in other years, IDEA regulations permit only one IEE per child at public expense. See 34 C.F.R. S 300.503(b) (1993); Illinois State Bd. of Educ., 41 F.3d at 1169. The district court interpreted the parents' request as a request for reimbursement of the 1993 IEEs and the parents do not take issue with that interpretation on appeal.

11

> parent still has the right to an independent educational evaluation, but not at public expense.

34 C.F.R. S 300.503(b) (1991). Moreover, the parents' failure to express disagreement with the District's evaluations prior to obtaining their own does not foreclose their right to reimbursement. See Illinois State Bd. of Educ., 41 F.3d at 1169; Hudson v. Wilson, 828 F.2d 1059, 1065 (4th Cir. 1987). To accept the District's argument would render the regulation pointless because the object of parents' obtaining their own evaluation is to determine whether grounds exist to challenge the District's. See Hudson, 828 F.2d at 1065.

The District Court went on to hold that the hearing officer's findings that the District's evaluations of Grant and Warren were appropriate were unsupported by substantial evidence. It found the primary deficiency in these evaluations to be their failure to uncover the specific areas of Grant's and Warren's learning disabilities. See 34 C.F.R. S 300.532(b) (1991) (requiring that the public agency use "[t]ests and other evaluation materials . . . tailored to assess specific areas of educational need"); 34 C.F.R.S300.532(f) (1991) (requiring that a child be "assessed in all areas related to the suspected disability"). The inappropriateness of the District's evaluation is further demonstrated by the fact that it was the parents' evaluator who identified the boys' specific problem areas: In Grant's case, punctuation, spelling and writing comprehension, and in Warren's, dyslexia. We find no clear error in the District Court's findings and agree that plaintiffs are entitled to be reimbursed for the 1993 IEEs.

CONCLUSION

We AFFIRM the judgment of the District Court in all respects except for its denial of reimbursement for tuition for both Grant and Warren commencing with the second semester of the 1995-96 school year, and REMAND for entry of a revised judgment.

12

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

13