**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-2376

_____

GAVIN K., through his parents, Andrew K. and Allyson K.;
ANDREW K. and ALLYSON K., adults, individually, and on their own behalf,
Appellants

v.

DOWNINGTOWN AREA SCHOOL DISTRICT
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-21-cv-03212)
U.S. District Judge: Honorable Paul S. Diamond
_____

Submitted under Third Circuit L.A.R. 34.1(a)
May 19, 2023
_____

Before: GREENAWAY, JR., PHIPPS, and CHUNG, <u>Circuit Judges</u>.

(Filed: June 5, 2023)

_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

CHUNG, Circuit Judge.

Gavin K. and his parents (hereinafter "G.K." and "Parents") sought reimbursement from Downingtown Area School District ("DASD") for G.K.'s 2020–21 tuition at Benchmark School ("Benchmark") pursuant to the Individuals with Disabilities Education Act ("IDEA"). The claim was denied by a Pennsylvania special education Hearing Officer who determined that G.K.'s private school placement was not proper under the IDEA. The United States District Court for the Eastern District of Pennsylvania affirmed the Hearing Officer's decision by its order. For the reasons explained herein, we will affirm the District Court's order.

I.[1]

When G.K. was in the first grade, DASD determined he was "a student with a specific learning disability." Appendix ("App.") 1. After his second-grade year, Parents removed G.K. from DASD schools and enrolled him at Benchmark, a private school for "children with learning differences." App. 1463. G.K. continued his education at Benchmark through sixth grade (2019–20). On or about May 19, 2020, near the end of sixth grade, Parents contacted DASD for an evaluation with an eye towards possibly enrolling G.K. in DASD for seventh grade. In June, DASD sent a Notice of Recommended Educational Placement ("NOREP") to Parents declining to evaluate G.K. until school re-opened due to COVID. DASD also communicated via email with Parents that it could provide "regular education interventions while simultaneously working

---

[1] Because we write for the parties, we recite only facts pertinent to our decision.

through the evaluation process" if G.K. attended a DASD school in the fall of 2020. App. 345. Parents did not approve the June 2020 NOREP.

On August 17, 2020, Parents notified DASD that they intended to continue G.K.'s education at Benchmark for the 2020–21 school year and to seek tuition reimbursement for that year. DASD proposed an individualized education plan ("IEP") shortly thereafter and Parents did not approve it. Parents requested a special education due process hearing on November 25, 2020, alleging that DASD was not offering G.K. a Free and Appropriate Public Education ("FAPE") pursuant to the IDEA, Section 504 of the Rehabilitation Act of 1973, and Pennsylvania law.[2]

The Hearing Officer considered multiple evaluations of G.K., dating from first grade through October 2020, conducted by DASD, Benchmark, G.K.'s personal tutor, and a psychologist engaged by Parents. The Hearing Officer also took testimony over three days from multiple witnesses, including administrators and staff from both Benchmark and DASD, as well as from Andrew K. (Parent). After considering the evidence in its entirety, the Hearing Officer found that DASD's proposed IEP (August 2020) was inappropriate and that DASD had failed to provide G.K. a FAPE; nevertheless, the Hearing Officer found Parents were not entitled to reimbursement because they failed to make the necessary showing that Benchmark was an appropriate private school placement for G.K.

---

[2] Parents have not made any appeal to Section 504 or Pennsylvania law in briefing; accordingly, any argument that might have been made pursuant to such authority is abandoned. Kost v. Kozakiewicz, 1 F.3d 176, 182 (3d Cir. 1993).

G.K. and Parents challenged the Hearing Officer's decision before the District Court and both parties moved for judgment on the administrative record. The District Court agreed with the Hearing Officer that Benchmark was not an appropriate private school placement, denied Parents' motion for judgment on the administrative record, and granted DASD's cross-motion.

G.K. and Parents timely appealed.

## II.[3]

The IDEA obligates states that receive "federal funds to assist in educating children with disabilities" to "provide a [FAPE] … to all eligible children." Endrew F. ex rel. Joseph F. v. Douglas Cnty. Sch. Dist. RE-1, 580 U.S. 386, 390 (2017) (citing 20 U.S.C. § 1412(a)(1)). "School districts provide a FAPE by designing and administering a program of individualized instruction that is set forth in an [IEP]." Mary T. v. Sch. Dist. of Phila., 575 F.3d 235, 240 (3d Cir. 2009) (citing 20 U.S.C. § 1414(d)). When a parent believes his or her child was denied a FAPE, the parent "may request a hearing, commonly known as a due process hearing, to seek relief from the school district." Id. Because it can take time to challenge a school district's failure to provide a FAPE, parents "may unilaterally remove their disabled child from that school, place him or her in another school, and seek tuition reimbursement for the cost of the alternate

---

[3] The District Court had jurisdiction pursuant to 20 U.S.C. § 1415(i)(2) and 28 U.S.C. § 1331. We have jurisdiction to review the District Court's final decision pursuant to 28 U.S.C. § 1291.

4

placement." Id. at 242 (citing 20 U.S.C. § 1412(a)(10)(C); Sch. Comm. of Burlington v. Dep't of Edu., 471 U.S. 359, 374 (1985)).

The decision to "unilaterally remove" a child from public school is an expeditious solution that comes with some financial risk, given that parents who make this decision are not automatically entitled to reimbursement. Id. To establish an entitlement to reimbursement, a parent must show that (1) "the School District failed to provide the required FAPE," id., and (2) "the private school placement was proper under the Act." Florence Cnty. Sch. Dist. Four v. Carter ex rel. Carter, 510 U.S. 7, 15 (1993); Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 276 (3d Cir. 2007).[4] The second factor itself has two components: "[a] private placement is 'proper' if it (1) is 'appropriate,' i.e., it provides 'significant learning' and confers 'meaningful benefit,' and (2) is provided in the least restrictive educational environment." DeFlaminis, 480 F.3d at 276 (citing Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 248 (3d Cir. 1999)).[5] A

---

[4] "[E]quitable considerations" are a third factor in tuition reimbursement claims. Florence Cnty., 510 U.S. at 16 (quoting Burlington, 471 U.S. at 374). "[E]ven where private placement is appropriate and reimbursement is otherwise due, the IDEA permits the equitable reduction or elimination of tuition reimbursement under certain circumstances." C.H. v. Cape Henlopen Sch. Dist., 606 F.3d 59, 67 (3d Cir. 2010) (discussing 20 U.S.C. § 1412(a)(10)(C)(iii)). In this case, neither the Hearing Officer nor the District Court reached the issue of equitable considerations and they are irrelevant to our resolution of the instant appeal.

[5] The parties disagree as to how the proper private school placement analysis accounts for the least-restrictive-environment consideration. In Ridgewood, the Court explained that a private placement was not improper only because it was more restrictive than a student's public placement. 172 F.3d at 249; Warren G. ex rel. Tom G. v. Cumberland Cnty. Sch. Dist., 190 F.3d 80, 84 (3d Cir. 1999). Our decision does not turn on this factor and we need not resolve this legal nuance here.

private school may be found to provide significant learning and confer meaningful benefit, i.e., be appropriate, even if it does not meet state education standards, boast certain certifications, or offer IEPs to its students. DeFlaminis, 480 F.3d at 276–77 (discussing Florence Cnty., 510 U.S. at 13–14).

An administrative decision on a tuition reimbursement claim is subject to a "modified de novo" standard of review if challenged in a federal district court. Id. at 266 (quoting S.H. v. State-Operated Sch. Dist. of Newark, 336 F.3d 260, 270 (3d Cir. 2003)). Pursuant to the modified de novo standard, the district court "make[s] its own findings by a preponderance of the evidence," but must "afford 'due weight'" to administrative factfinding. Mary T., 575 F.3d at 241 (quoting Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S., 381 F.3d 194, 199 (3d Cir. 2004)). The district court affords due weight to administrative factfinding by treating findings as "prima facie correct" and explaining any deviation from them. Shore Reg'l, 381 F.3d at 199 (quoting S.H., 336 F.3d at 271). "In addition, if a state administrative agency has heard live testimony and has found the testimony of one witness to be more worthy of belief than the contradictory testimony of another witness, that determination is due special weight." Id. (citing S.H., 336 F.3d at 271). The district court must defer to the administrative "findings based on credibility judgments unless the non-testimonial, extrinsic evidence in the record would justify a contrary conclusion or unless the record read in its entirety would compel a contrary conclusion." S.H., 336 F.3d at 270 (quoting Carlisle Area Sch. v. Scott P. ex rel. Bess P., 62 F.3d 520, 529 (3d Cir. 1995)).

In turn, our review is plenary with respect to "legal standards applied by the District Court and . . . its legal conclusions." Mary T., 575 F.3d at 242. We review the District Court's findings of fact "for clear error." Id. (citing Shore Reg'l, 381 F.3d at 199).

Parents argue that the District Court legally erred in affirming the Hearing Officer's denial of their tuition reimbursement claim. They allege that the District Court effectively heightened the legal standard for establishing that a private school placement is appropriate.

Our review of the District Court's decision reveals no legal error or clearly erroneous factfinding. The District Court correctly articulated relevant legal standards, starting with the modified de novo standard of review and the degree of deference it owed to the Hearing Officer's findings pursuant thereto. The District Court also applied the correct standard in evaluating the appropriateness of Benchmark. App. 6.

The District Court considered the full administrative record of testimony and exhibits, the Hearing Officer's evaluation of that record, and the Hearing Officer's ultimate findings. The District Court's consideration included review of Parents' evidence, such as evidence that G.K. had "three check-in periods" daily for assistance in reading fluency and math (App. 7), and evidence of assessments reflecting G.K.'s academic gains. After this review, the District Court largely adopted the Hearing Officer's findings and determined that: 1) G.K. had "significant needs" in multiple subjects; 2) that Benchmark lacked "instruction tailored to [G.K.'s] needs," such as "targeted intervention to address his reading fluency and decoding;" 3) there was

7

evidence G.K. had made "minimal progress;"[6] and, 4) such progress was "insufficient to overcome the lack of instruction designed to address [his] specific needs." App. 7–8. Accordingly, the District Court determined that Benchmark was not an appropriate placement.

Parents argue that G.K.'s progress at Benchmark showed significant learning and meaningful benefit, but that the District Court required much more than that: a showing of significantly tailored instruction akin to an IEP; across-the-board improvement on assessments and achievement tests; and objective progress without regard for persistent limitations associated with disability, i.e., a degree of improvement that would have only been possible if G.K.'s disability had been "cure[d]." Appellant's Br. 22.[7]

Rather than imposing a heightened standard, the record reflects that the District Court considered all the evidence and arguments before it, including those offered by Parents, and afforded the Hearing Officer's findings proper deference. We find that the District Court did not erroneously raise the bar by requiring evidence of unrealistic improvement or across-the-board improvement on assessments and achievement tests. A student's progress at his or her private school is relevant to whether the placement is

---

[6] In its "Background" discussion, the District Court remarked that "[G.K.] does not appear to have made progress during his time at Benchmark." App. 3. However, the rest of the District Court's decision makes it clear that the Court found G.K. made "minimal progress." App. 8.

[7] Parents also rebut any challenge to Benchmark's appropriateness for failure to provide research-based curriculum, but the District Court ultimately set aside the question of whether "Benchmark provides research-based education" in its evaluation of the appropriateness of the Benchmark placement. App. 7.

appropriate and Parents acknowledge this. In fact, Parents have argued that the District Court erred when it did not find that G.K.'s minimal progress alone was sufficient to establish the propriety of his placement at Benchmark. Appellant's Br. 21. As the Second Circuit explained in Gagliardo, however, a student's academic progress may be attributable to the general "advantages and amenities" offered by a private school that would be attractive to the "parents of any child, disabled or not." Gagliardo v. Arlington Cent. Sch. Dist., 489 F.3d 105, 115 (2d Cir. 2007). Accordingly, evidence of progress does not necessarily establish that a parent's unilateral private placement is appropriate. Id.; Ridgewood, 172 F.3d at 248 (appropriateness is not evaluated pursuant to bright-line rules).

Moreover, while we recognize that the courts have often used the words "tailored to the unique needs of the disabled student" to consider whether a FAPE was offered through an IEP, Ridgewood, 172 F.3d at 247 (citing Bd. of Educ. v. Rowley, 458 U.S. 176, 181 (1982)), the District Court's use of the word "tailoring" is not talismanic, conjuring an IEP requirement by its mere utterance. Our review instead indicates that the District Court found Benchmark did not offer G.K. significant learning and meaningful benefit in light of evidence both that Benchmark's instruction misaligned with G.K.'s needs and that G.K. made only minimal progress. That finding does not appear to be erroneous where the assessments as a whole showed a mix of progress in some areas but

9

stagnation or decline in others[8] and where, for example, the evidence reflected that Benchmark used the same "grade level" novels with all students, including G.K., even though G.K.'s reading ability was below grade level. App. 1155–56; App. 1464, 7. While we understand Parents would have weighed the evidence differently, the evidence they offer to counter the Hearing Officer's findings is insufficient to "overcome[] the deference" the District Court must afford them or to find clear error. DeFlaminis, 480 F.3d at 277; cf. Hardison v. Bd. of Educ. of the Oneonta City Sch. Dist., 773 F.3d 372, 388 (2d Cir. 2014) (district court failed to afford proper deference to state review officer's conclusion that evidence connecting private school's services to a particular plan for child or objective evidence showing progress was insufficient to find placement was appropriate).

## III.

For the foregoing reasons, we will affirm the District Court's order signed July 1st and entered July 5, 2022, denying G.K. and Parents' motion for judgment on the administrative record and granting DASD's cross-motion.

---

[8] For example, the Hearing Officer observed that, over the past four years, some of G.K.'s reading scores on the Wechsler Individual Achievement Test decreased and that G.K.'s i-Ready scores for reading and math showed only a slight improvement, if any.

10