**Aleksandre I. CHIMAREV, Plaintiff,**

v.

**TD WATERHOUSE INVESTOR SERVICES, INC.**
**Defendant.**

**No. 01 Civ. 7120(VM).**

United States District Court,
S.D. New York.

Sept. 4, 2003.

Aleksandre I. Chimarev, Brooklyn, NY, Pro se.

Kenneth Kirschner, Kelley, Drye & Warren, LLP, New York City, for Defendant.

## DECISION AND AMENDED ORDER

MARRERO, District Judge.

Plaintiff Aleksandre Chimarev ("Chimarev"), proceeding *pro se,* filed a complaint in New York State Supreme Court, New York County, against his former employer, TD Waterhouse Investor Services, Inc. ("TD Waterhouse"), alleging various claims relating to discrimination in his employment. (*See* Complaint and Demand for Jury Trial, dated July 23, 2001 ("Complaint") at ¶¶ 4(a)-(j), 5.) TD Waterhouse removed the case to federal court and subsequently moved to dismiss the Complaint pursuant to Fed.R.Civ.P. 12(b)(6) or, in the alternative, for summary judgment pursuant to Fed.R.Civ.P. 56. Chimarev opposed the motion and cross-moved for summary judgment. On July 2003, Magistrate Judge Gabriel Gorenstein issued a Report and Recommendation (the "Report") recommending that TD Waterhouse's motion for summary judgment be granted and that Chimarev's cross-motion for summary judgment be denied. The Report is attached and incorporated herein. On July 24, 2003, Chimarev filed timely objections to the Report. By Order dated July 29, 2003, the Court ruled upon the respective motions and stated that its findings, conclusions and reasoning would be set forth in a separate Decision and Order to be made available to the parties. Accordingly, the Court, having reviewed the record, Chimarev's objections and the analysis and conclusions in the Report de novo, grants TD Waterhouse's motion for

summary judgment and denies Chimarev's cross-motion for summary judgment essentially for the reasons articulated in Magistrate Judge Gorenstein's Report.

## I. *STANDARD OF REVIEW*

Magistrate judges are empowered by statute to preside over certain pretrial matters upon referral by a district judge. *See* 28 U.S.C. § 636(b)(1)(a). The district judge evaluating a magistrate judge's recommendation may adopt those portions of the recommendation, without further review, where no specific objection is made, as long as they are not clearly erroneous. *See id.;* Fed.R.Civ.P. 72(b); *see also Thomas v. Arn,* 474 U.S. 140, 149, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985) (district courts are not required to conduct "any review at all ... of any issue that is not the subject of an objection.") However, when a party makes "specific, written objections" within ten days after being served with a copy of the magistrate judge's report and recommendation, the district court must undertake de novo review of those contested aspects of the report. 28 U.S.C. § 636(b)(1)(c); *see also* Fed.R.Civ.P. 72(b). The district judge may then "accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions." Fed. R.Civ.P. 72(b).

In this instance, Magistrate Judge Gorenstein recommends that summary judgment be granted to TD Waterhouse, dismissing the Complaint in its entirety. In light of Chimarev's objections, the Court independently reviews those aspects of the Report to which Chimarev specifically objects and adopts the remainder of the Report, to which no objections have been raised, without further review.

## II. *DISCUSSION*

### A. *FEDERAL CLAIMS*

#### 1. *Title VII*

Chimarev objects to the Report's dismissal of his claims pursuant to Title VII, 42 U.S.C. § 2000e *et seq.* ("Title VII"), all of which relate to the alleged discrimination against him by TD Waterhouse in violation of the terms and conditions of his employment. Chimarev contends that because he established a prima facie case of discrimination in the workplace, a presumption of discrimination arises and the burden to articulate a legitimate reason for the challenged employment decision is on TD Waterhouse. Therefore, Chimarev argues that it is proper for him to bring his claims of discrimination and retaliation under Title VII.

Regardless of the potential substantive merit of Chimarev's Title VII claims, however, he is procedurally barred from pursuing any claims under Title VII due to his failure to file a complaint with the Equal Employment Opportunity Commission ("EEOC") or an appropriate state or local administrative agency. It is well settled that "[a] plaintiff may bring an employment discrimination action under Title VII or the ADEA only after filing a timely charge with the EEOC or with a 'State or local agency with authority to grant or seek relief from such practice.'" *Holtz v. Rockefeller & Co., Inc.,* 258 F.3d 62, 82–83 (2d Cir.2001) (quoting 42 U.S.C. § 2000e–5). Filing with the EEOC or other appropriate administrative agency is a condition precedent to bringing a Title VII claim in this Court: "[E]xhaustion of administrative remedies through the EEOC stands as 'an essential element of Title VII's statutory scheme,' ... and one with which defendant's are entitled to insist that plaintiffs comply." *Francis v. City of New York,* 235 F.3d 763, 767–768 (2d Cir.

2000) (quoting *Butts v. City of New York Dep't of Hous. Pres. and Dev.*, 990 F.2d 1397, 1401 (2d Cir.1993)).

Although Chimarev complained internally about his alleged discriminatory treatment within TD Waterhouse on multiple occasions, he admittedly never brought claims regarding discrimination to either the EEOC or the New York State Division of Human Rights. (Deposition of Aleksandre I. Chimarev ("Chimarev Dep."), dated December 4, 2001, attached as Exh. B to the Reply Affirmation of Jonathan Stoler in Support of Defendant's Motion for Summary Judgment ("Stoler Aff."), dated May 19, 2003, at 19–20.) Chimarev's attempts to "avail himself of justice within the administrative organs of the institution that wronged him," (Plaintiff's Opposition and Counter Motion in Response to Defendant's Motion for Summary Judgment ("Pl.Opp."), dated April 16, 2003, at 7), are insufficient to meet the filing requirements of Title VII; and therefore, his Title VII claims are procedurally barred.

### 2. *Failure to Pay*

Chimarev next objects to the Report's findings with regard to his "failure to pay claim" under the Fair Labor Standards Act, 29 U.S.C. § 160, *et seq.* ("FLSA"). Specifically, Chimarev challenges the Report's conclusion that "TD Waterhouse adduced undisputed evidence that Chimarev was terminated on February 7, 2001," (Report at 16), and he reiterates his assertion that he is owed salary and severance, and that he was not actually terminated until mid-March 2001. (Plaintiff's Objections and Responses to Report and Recommendation ("Pl.Obj."), dated July 24, 2001, at 5.)

■ Chimarev's failure to pay claim must be dismissed. Although Chimarev claims that he had "no advance notice of termination, no exit interview, no final pay-

ment, signatures, etc.," (*Id.* at 5), Chimarev asserts in his Complaint that he was terminated. (Complaint ¶¶ 4(e), 6(d)). With regard to the date upon which Chimarev's termination became effective, TD Waterhouse has produced documentary and testimonial evidence establishing that Chimarev was terminated by Curtis Langdon ("Langdon"), Vice President of Human Resources at TD Waterhouse, during a meeting on February 7, 2001, and that the termination was intended to be effective immediately. (*See* email from Langdon to Sharon Alton, dated February 7, 2001, attached as Exh. P to the Stoler Aff.; letter from Pauline Chin to Chimarev, dated March 2, 2001, attached as Exh. S to the Stoler Aff; Affidavit of Langdon, dated February 14, 2003, at ¶ 20.) In fact, in his deposition, Chimarev himself admits that his last day of work was February 7, 2001, and that Langdon informed him that he was terminated verbally on that date. Chimarev complains, however, that his dismissal was not legal because it was "subterfuge" and because he did not receive the proper paperwork until mid-March 2001. (*See* Chimarev Dep. at 141–142; Pl. Obj. at 5.)

■ Since Chimarev was an at-will employee, he could be fired at any time without notice, as is specified in a letter offering Chimarev employment at TD Waterhouse ("Offer Letter") from Langdon, dated June 22, 2000: "Your employment with the Company, should you accept this offer, will not be for any specified term and may be terminated at any time, with or without notice, by you or the Company for any reason." (Offer Letter, attached as Exh. C to the Stoler Aff. at 2.) Moreover, where no particular form of termination is required by an employment contract, oral termination is equally as effective in terminating an at-will employee as a written termination

letter. (*See, e.g., Bargstedt v. Cornell University,* 304 A.D.2d 1035, 757 N.Y.S.2d 646, 646 (3rd Dept.2003)) (oral termination of employee immediately effective); *Mohawk Agency, Inc. v. American Cas. Co.,* 227 F.Supp. 745, 749 (N.D.N.Y.1964) (oral termination insufficient because contract required written termination). Chimarev was thereby terminated, orally, on February 7, 2003. Therefore, based on the undisputed evidence in the record, in particular Chimarev's own admission, Chimarev was appropriately paid until the date of his termination on February 7, 2001. Consequently, he has no claim for unpaid salary under FLSA.

Moreover, with regard to Chimarev's claim that he is owed severance, he has failed to provide any evidence that he was contractually entitled to severance pay. Therefore, he has failed to produce sufficient evidence of his entitlement to severance pay to create an issue of material fact to be litigated before a jury.

## B. *STATE LAW CLAIMS*

### 1. *Public Policy*

Chimarev next objects to the Report's conclusions with regard to his state law claim for breach of public policy, good faith and fair dealing. Chimarev clarifies that he bases this claim not on his alleged wrongful termination, as the Report implies, but on TD Waterhouse's failure to transfer him to another, discrimination-free department in accordance with his repeated requests.

■ However, the Court is not persuaded that this distinction is legally significant. Whether for an alleged adverse employment action, such as refusal to transfer, or for wrongful discharge, a cause of action for a breach of public policy can not be maintained under New York law. *See Lobosco v. New York Tel. Co./NYNEX,* 96 N.Y.2d 312, 727 N.Y.S.2d 383, 751 N.E.2d 462, 464 (2001) (citing *Murphy v. Am. Home Prods. Corp.,* 58 N.Y.2d 293, 297, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983)). In other words, there is no legally actionable public policy basis under New York law for Chimarev to sue TD Waterhouse for its failure to provide him with a desired transfer, a less drastic measure than wrongful discharge. In this case, moreover, as a factual matter, Chimarev did not even meet the stated requirements for such a transfer. (*See* letter from Langdon to Wayne Kyle and Sharon Alton, dated February 7, 2001, attached as Exh. O. to the Stoler Aff.)

### 2. *Intentional Inflict of Emotional Distress*

Chimarev next objects to the Report's conclusion that he failed to state a claim for intentional infliction of emotional distress. However, even if deemed true, Chimarev's allegations concerning TD Waterhouse's improper conduct do not satisfy the standards for stating a claim for emotion distress under New York law. In this regard, the Court agrees with Magistrate Judge Gorenstein's conclusion.

■ A plaintiff must satisfy four elements to state a claim for the intentional inflict of emotional distress under New York law: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing severe, emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. New York Post Co.,* 81 N.Y.2d 115, 596 N.Y.S.2d 350, 612 N.E.2d 699, 702 (1993) (citations omitted). The threshold for meeting the extreme and outrageous conduct element is high: "Liability has been found only where the conduct has been so outrageous in character, and so

extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Murphy*, 58 N.Y.2d at 297, 461 N.Y.S.2d 232, 448 N.E.2d 86 (quoting Restatement [Second] of Torts § 46, cmt. d (1965)).

■ Chimarev specifies the alleged overall discriminatory and abusive treatment he suffered during his employment by asserting that TD Waterhouse prevented him from attending meetings and social events, denied him his chosen workplace for the benefit of a younger co-worker, destroyed and scattered his books and documentation, deprived him of his work tools, and subjected him to insults and slurs based on his nationality. The Court is not persuaded that these allegations amount to the requisite level of extreme and outrageous conduct defying all bounds of civilized society. Simply put, being snubbed by co-workers, disciplined by managers in an unpleasant manner, and taunted by peers for ethnic differences are not actionable under the tort of intentional infliction of emotional distress. *See, e.g.*, *Herlihy v. Metropolitan Museum of Art*, 214 A.D.2d 250, 633 N.Y.S.2d 106, 114 (1st Dep't 1995) (ethnic epithets, sexual harassment, and discrimination were found to be "wholly inappropriate but not so outrageous in character or so extreme in degree as to be wholly intolerable in a civilized community."); *Leibowitz v. Bank Leumi Trust Co. of N.Y.*, 152 A.D.2d 169, 548 N.Y.S.2d 513, 522 (2nd Dep't 1989) (the use of the terms "Hebe" and "Kike" was strongly disapproved and condemned but was found to be not so extreme or outrageous as to meet the threshold requirement for a cause of action of intentional infliction of emotional distress); *Foley v. Mobil Chemical Co.*, 214 A.D.2d 1003, 626 N.Y.S.2d 906, 907–908 (4th Dep't 1995); *Nader v. General Motors Corp.*, 25 N.Y.2d 560, 307 N.Y.S.2d 647, 255 N.E.2d 765, 770 (1970) ("[I]t is manifestly neither practical nor desirable for the law to provide a remedy against any and all activity which an individual might find annoying.")

■ Furthermore, as indicated in the Report, because he was an at-will employee, Chimarev is also precluded from bringing a claim for intentional infliction of emotional distress to the extent that his claim is based on his termination from TD Waterhouse. *See Abeles v. Mellon Bank Corp.*, 298 A.D.2d 106, 747 N.Y.S.2d 372, 373 (1st Dep't 2002) ("Plaintiff was an at-will employee terminable from her position at any time and for any reason, or even for no reason at all, and thus was without recourse to sue, as she has, for wrongful discharge by means of a cause of action for intentional infliction of emotional distress.") (citing *Murphy* 58 N.Y.2d at 300, 303, 461 N.Y.S.2d 232, 448 N.E.2d 86).

### 3. *Breach of Contract and Fraud*

■ Chimarev further objects to the Report's dismissal of his breach of contract and fraud claims, asserting that TD Waterhouse broke its employment agreement with him by failing to provide a safe, discrimination free environment, depriving him of his workspace and tools, reducing his position in the company to that of a "doorman," and using his superior "know-how" for the benefit of training workers who lacked a PhD and his extensive experience. However, Chimarev does not even attempt to refute the settled legal principle cited by Magistrate Judge Gorenstein that an at-will employees can not sue for breach of contract or fraud with regard to a non-existent employment contract. Chimarev merely recites the bases for his allegations without contending with the legal principles set forth in the Report. Therefore, Chimarev's conclusory objection is to no avail.

Chimarev signed the Offer Letter, which explicitly indicated that the terms of his employment were at-will. (*See* Offer Letter, attached as Exh. C to the Stoler Aff.) Moreover, under New York law, "[a]bsent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party." *De Petris v. Union Settlement Assoc., Inc.*, 86 N.Y.2d 406, 633 N.Y.S.2d 274, 657 N.E.2d 269, 271 (1995)(citing *Sabetay v. Sterling Drug*, 69 N.Y.2d 329, 332, 514 N.Y.S.2d 209, 506 N.E.2d 919 (1987)). Thus, as an at-will employee, who can be terminated at any time and for any reason, Chimarev can not maintain an action for breach of contract where no such contract existed. *See Minton v. Lenox Hill Hosp.*, 160 F.Supp.2d 687, 699 (S.D.N.Y.2001).

Moreover, with regard to Chimarev's assertion that TD Waterhouse engaged in fraudulent misrepresentation by hiring him only to transfer his "know-how" to other workers, under New York law, a claim of fraud requires that the plaintiff demonstrate reasonable reliance upon a false statement. *See Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir.1994). Here, it is not entirely clear what misrepresentation Chimarev alleges. Understood liberally, the false statement might be TD Waterhouse's offer of employment, although in actuality Chimarev alleges that TD Waterhouse only wanted to transfer his knowhow to other employees. However, as Chimarev's employment offer was at-will, and Chimarev could be fired at any time and for any reason, he cannot provide any evidence of reasonable reliance based on the Offer Letter. *See Arias v. Women in Need, Inc.*, 274 A.D.2d 353, 712 N.Y.S.2d 103, 103–104 (1st Dep't 2000); *see also Tannehill v. Paul Stuart, Inc.*, 226 A.D.2d 117, 640 N.Y.S.2d 505, 506 (1st Dep't 1996) ("[i]t cannot be said that plaintiff reason-ably relied on defendant's representation, because the offered employment was at will"). Moreover, it is not inappropriate for an employee to be expected to transfer his know-how to other employees, nor is an expectation of such on the part of an employer legally actionable under New York law.

### 4. *Invasion of Privacy*

Similarly, in his objection to the Report's recommendation that his invasion of privacy claim be dismissed, Chimarev summarily restates his claim but fails to refute the valid legal conclusions in the Report. In New York, "the right to privacy is governed exclusively by sections 50 and 51 of the Civil Rights Law; [New York has] no common law of privacy." *Howell*, 596 N.Y.S.2d 350, 612 N.E.2d at 703. Section 50 of the Civil Rights Law prohibits the unauthorized commercial use of a private persons "name, portrait, or picture" without prior consent, while section 51 provides a private right of action to a person aggrieved under section 50. *See* N.Y. Civil Rights L. § 50, 51 (McKinney 2003).

According to TD Waterhouse, Chimarev's inability to provide supervisors with documentation of his work, failure to complete assigned projects, and on-going disciplinary issues such as insubordination and disregard for protocol led to concerns regarding how Chimarev was using his time on TD Waterhouse computer systems. As a result, an executive decision was made to look into Chimarev's computer and email records for inappropriate use of TD Waterhouse servers and records. (Stoler Aff. Ex. G.) Since New York's limited right of privacy does not prohibit an employer from accessing employee email and other documents produced on the company's system, Chimarev has no claim to adjudicate.

### 5. *Opportunity for Discovery*

Finally, with regard to Chimarev's objection to the Reports's conclusion concerning the sufficiency of his time for discovery, the Court is persuaded that ample time for discovery was afforded. In addition, Chimarev does not submit any affidavit or other evidence that establishes what further information could be unearthed by any specific additional discovery: "[A] party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing '(1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.' " *Gurary v. Winehouse*, 190 F.3d 37, 43 (2d Cir.1999) (quoting *Meloff v. N.Y. Life Ins. Co.*, 51 F.3d 372, 375 (2d Cir.1995)) (citations omitted). Because Chimarev has not met this requirement, and because extensive discovery has already occurred, Chimarev's objection to the lack of discovery does not persuade the Court that TD Waterhouse's motion for summary judgment should be denied.

### III. *ORDER*

For the reasons stated above, and as set forth by Magistrate Judge Gorenstein in the Report, it is hereby

ORDERED that the Court's Order dated July 29, 2003, is amended to incorporate the discussion set forth above; and it is further

ORDERED that TD Waterhouse's motion for summary judgment is granted.

ORDERED that Chimarev's cross-motion for summary judgment is denied.

The Clerk of the Court is directed to close this case.

SO ORDERED.

### REPORT AND RECOMMENDATION

GORENSTEIN, United States Magistrate Judge.

Aleksandre I. Chimarev, proceeding *pro se*, brought this suit against his former employer TD Waterhouse Investor Services, Inc. ("TD Waterhouse") in New York state court asserting various claims relating to discrimination in his employment. TD Waterhouse removed the case to this Court. TD Waterhouse has now moved to dismiss or in the alternative for summary judgment as to all of Chimarev's claims. Chimarev has opposed the motion and cross-moved for summary judgment. For the reasons stated below, judgment should be entered in favor of TD Waterhouse dismissing this case.

### I. BACKGROUND

#### A. *Facts*

The following facts derive in part from TD Waterhouse's statement of undisputed material facts. Except as otherwise noted, and for reasons described further below, Chimarev has not properly disputed any of the facts contained in TD Waterhouse's statement.

Chimarev was born on February 23, 1937 in Moscow, Russia. Defendant's Statement of Undisputed Facts Pursuant to Local Rule 56.1, dated February 19, 2003 ("Def. 56.1 Statement") (reproduced in Notice of Motion for Summary Judgment, filed February 19, 2003 ("Def.Motion") (Docket # 31)) ¶ 2. TD Waterhouse is a financial services company with its headquarters at 100 Wall Street, New York, New York, and operates an office at One Harborside Financial Center Plaza, Jersey City, New Jersey. *Id.* ¶ 3.

Chimarev was hired by TD Waterhouse on or about July 10, 2000. *Id.* ¶ 5. Prior to his start date, TD Waterhouse sent Chimarev a letter confirming its offer of employment. *See* Letter to Aleksandre Chimarev from Curtis O. Langdon, Jr., dated June 22, 2000 ("Offer Letter") (reproduced in Affirmation of Jonathan Stoler in Support of Defendant's Motion for Summary Judgment, dated February 13, 2003 ("Stoler Aff.") (annexed to Def. Motion), Ex. C). In addition to detailing the benefits and conditions of his employment, the letter notified Chimarev of his status as an "at will" employee. *See id.* at 2. Chimarev signed this letter. *See id.;* Deposition of Aleksandre I. Chimarev, dated December 4, 2001 ("Chimarev Dep.") (reproduced in Stoler Aff. Ex. B), at 95. Chimarev was never given an employment contract and did not receive any promises regarding a defined term of employment. Def. 56.1 Statement ¶ 8; Chimarev Dep. at 100–01.

Chimarev was hired to work as a Senior Programmer in TD Waterhouse's Information Services and Technology Division ("IS Division"). Def. 56.1 Statement ¶ 5. Within the IS Division, he worked as part of the Microbank Development Group ("Microbank Group") developing software applications and programs for internal use at TD Waterhouse. *Id.* ¶ 6. Initially, Chimarev worked under Shlomi Segal, who was the manager of the Microbank Group. *Id.* ¶ 9.

Segal left TD Waterhouse in October 2000. *Id.* ¶ 12. Following Segal's departure Chimarev began reporting to Michael Jandoli, a Vice President in the Microbank Group. *Id.* ¶ 13. In approximately December 2000, Chimarev received a raise of $1,000 in his salary, which brought his annual compensation to $76,000. *Id.* ¶ 15.

On a number of occasions in December 2000, Jandoli met with Chimarev regarding a number of job performance issues. *Id.* ¶ 23. The meetings discussed Chimarev's apparent failure to save documentation of his work, poor work relations with co-workers and insubordination towards superiors. *See* Affidavit of Michael Jandoli, dated February 19, 2003 ("Jandoli Aff.") (reproduced in Def. Motion), ¶ 4. On January 24, 2001, Jandoli held another meeting with Chimarev to review IS Division policies regarding documenting work, as well as Chimarev's alienation of co-workers and insubordination issues. *Id.* ¶¶ 6, 7. At the meeting, Jandoli gave Chimarev a memorandum that contained a warning regarding Chimarev's failure to meet deadlines, insubordination and lack of professionalism. *Id.* ¶ 8; Memorandum to Alexandr [sic] Chimarev from Michael Jandoli, dated January 24, 2001 ("Performance Warning") (reproduced in Stoler Aff. Ex. H), at 1–4. Chimarev disagreed with the memorandum and indicated his opposition to the issues discussed through handwritten comments on the memorandum. *See* Performance Warning at 4.

On January 26, 2001, Chimarev submitted a request to TD Waterhouse's human resources department seeking to transfer out of the Microbank Group. Def. 56.1 Statement ¶ 30; Internal Application, dated January 26, 2001 (reproduced in Stoler Aff. Ex. R). Chimarev requested a transfer to a systems analyst position. Def. 56.1 Statement ¶ 30.

On January 29, 2001, Chimarev submitted a memorandum detailing his disagreement with Jandoli's memorandum and the issues discussed. *See* Memorandum to Curtis Langdon from Aleksandre Chimarev, dated January 29, 2001 (reproduced in Stoler Aff. Ex. J), at 1–4. Chimarev claimed that he had never missed any deadlines, that his projects were successful, that Jandoli interfered with his work and that the problems with co-workers and Jandoli were not his fault. *Id.* at 1–4.

Chimarev again requested a transfer to a different position and offered to perform a demonstration of his work. *Id.* at 4.

On January 31, 2001, Chimarev met with Jandoli and Curtis Langdon, a vice president and human resources manager at TD Waterhouse. Def. 56.1 Statement ¶ 34; Jandoli Aff. ¶ 11; Affidavit of Curtis Langdon, dated February 14, 2003 ("Langdon Aff.") (reproduced in Def. Motion), ¶ 9. At the meeting, Chimarev claimed his work was excellent and again disputed the points raised in Jandoli's memorandum. Def. 56.1 Statement ¶ 35; Langdon Aff. ¶ 11. Jandoli then produced an e-mail from James Dimini, a manager at TD Waterhouse for whom Chimarev was supposed to develop a computer-based customer survey. Def. 56.1 Statement ¶ 36; E-mail to Michael Jandoli from James Dimini, dated December 27, 2000 (reproduced in Stoler Aff. Ex. E). Dimini's e-mail summarized a number of technical and personal problems he had experienced while working with Chimarev. During this meeting, Langdon told Chimarev he had to comply with Jandoli's directives. Def. 56.1 Statement ¶ 37; Langdon Aff. ¶ 12. Chimarev was not inclined to follow Jandoli's orders and claimed he was subjected to "inhuman treatment" and "harassment." Def. 56.1 Statement ¶ 37; Chimarev Dep. at 122. Chimarev again requested a transfer, but was informed by Langdon that he was ineligible to transfer because he had been employed with TD Waterhouse for less than 12 months and was not in good standing within his department. Def. 56.1 Statement ¶ 39; Langdon Aff. ¶ 13. Chimarev again offered to conduct a demonstration of his applications to more senior TD Waterhouse personnel. Def. 56.1 Statement ¶ 40. Langdon and Jandoli told Chimarev that his job required more than technical skill, but also required him to work well with others and comply with directives. Langdon Aff. ¶ 13.

During the January 31 meeting, Chimarev asked to meet with Richard Rzasa, the Chief Information Officer for TD Waterhouse. *See* Langdon Aff. ¶ 14. Langdon told Chimarev that he could not meet with Rzasa without going through intermediate levels of management. *Id.* Nonetheless, Chimarev proceeded to schedule a meeting with Rzasa for February 2, 2001. Def. 56.1 Statement ¶ 42; Langdon Aff. ¶ 15. Upon discovering the meeting, Langdon contacted Chimarev and told him to report to his office, not Rzasa's, on February 2. Def. 56.1 Statement ¶ 43; Langdon Aff. ¶ 15; Chimarev Dep. at 127–29.

At the February 2, 2001, meeting Langdon asked Chimarev whether he thought he was being discriminated against. Langdon Aff. ¶ 16. Chimarev denied being the victim of any discrimination. *Id.*; Chimarev Dep. at 161–62. Langdon proceeded to inform Chimarev that his performance was deficient and his behavior was insubordinate. Def. 56.1 Statement ¶ 45; Langdon Aff. ¶ 18. Chimarev was informed that without improvement in these areas he would be terminated. Langdon Aff. ¶ 18.

On February 6, 2001, Chimarev had a meeting with Jandoli, Jim Brennan, a first vice president in the IS Division, and Marc Beerman, a senior vice president in the IS Division, to demonstrate his programming accomplishments. Def. 56.1 Statement ¶¶ 46, 47; Jandoli Aff. ¶ 17. At the meeting, Beerman asked to review technical specifications and source code information about the projects. Def. 56.1 Statement ¶ 48. However, Chimarev was unable to provide any of the documentation or information and Beerman ended the meeting. *Id.* ¶ 49; Jandoli Aff. ¶¶ 19–21. Chimarev has produced a handwritten note from an unidentified person apparently documenting the meeting. *See* Notes, dated Febru-

ary 5, 2001 (reproduced in Plaintiff's Opposition and Counter–Motion in Response to Defendant's Motion for Summary Judgment, dated April 16, 2003 ("Pl.Op."), Ex. Z (appearing in a separate bound volume)). These notes indicate that Beerman thought Chimarev's presentation was "ok." *Id.* However, they also confirm that Chimarev refused Beerman's request for documentation and source code information about the presentation. *Id.*

On February 7, 2001, Chimarev was terminated by TD Waterhouse for poor performance, failure to abide by company procedures and insubordination. Def. 56.1 Statement ¶ 50; Langdon Aff. ¶ 20. Subsequently, Chimarev received his final paycheck and a letter detailing his rights regarding conversion of his medical and life insurance coverage. Def. 56.1 Statement ¶¶ 52, 53; Letter to Aleksandre Chimarev from Pauline Chin, Human Resources Representative, dated March 2, 2001 ("Chin Letter") (reproduced in Stoler Aff. Ex. S).

### B. *Procedural History*

#### 1. *The Complaint*

Chimarev originally filed his complaint in New York State Supreme Court in New York County. *See* Complaint and Demand for Jury Trial, dated July 23, 2001 ("Complaint"). Chimarev claimed violations of a number of federal and state statutes based on unlawful discrimination; harassment and abuse in the workplace; fraud; breach of public policy, good faith and fair dealing; wrongful termination; intentional infliction of emotional distress; breach of contract; violation of his privacy rights; retaliation for exercising his employment rights; and failure to pay wages. *Id.* ¶¶ 4(a)-(j), 5. The statutes invoked by Chimarev are Title VII, 42 U.S.C. § 2000e *et seq.;* the Civil Rights Act of 1991, 42 U.S.C. § 1981; the National Labor Relations Act, 29 U.S.C. § 160, *et seq.;* the Fair Labor Standards Act, 29 U.S.C. § 201; the Walsh–Healey Public Contract Act, 41 U.S.C. §§ 35–40; the Portal–to–Portal Pay Act, 29 U.S.C. § 251 *et seq.;* the Consolidated Omnibus Reconciliation Act ("COBRA"), 29 U.S.C. § 1161 *et seq.;* the Contract Work Hours and Safety Standards Act, 40 U.S.C. § 328 *et seq.;* the New York Labor Laws, N.Y. Labor L. §§ 190–199, 219–220, 700–719; and the New York Insurance Laws, N.Y. Ins. L. § 3221(m). *See* Complaint ¶ 5.

Chimarev's claims of unlawful discrimination center on his contention that he was a superior programmer but was not afforded privileges given to other workers. *Id.* ¶ 6(A). The harassment and abuse claims are based on Chimarev's allegation that he was excluded from meetings, that he was not provided work documentation, that his suggestions were ignored, and that his materials were borrowed by co-workers. *Id.* ¶ 6(B). The fraud claim is based on an allegation that TD Waterhouse had employed Chimarev to appropriate his knowledge for the benefit of less skilled programmers. *Id.* ¶ 6(C). The public policy claim is based on Chimarev's contention that he was wrongfully terminated. *Id.* ¶ 6(D). Chimarev's wrongful termination claim derives from his assertion that he was abruptly fired without prior notice or discipline. *Id.* ¶ 6(E). The intentional infliction of emotional distress was allegedly caused by TD Waterhouse personnel offending Chimarev by various means. *Id.* ¶ 6(F). Chimarev bases the breach of contract claim on his allegation that he was not told that he could be terminated without cause. *Id.* ¶ 6(G). The privacy claim is based on Chimarev's allegation that TD Waterhouse intruded on his workplace. *Id.* ¶ 6(H). Chimarev also claimed he was retaliated against because he sought protection by attempting to meet with Rzasa. *Id.* ¶ 6(I). Finally, Chimarev claims he

was not paid proper overtime and alleges that because he was never formally terminated he is still owed salary from the date he left TD Waterhouse until the present. *Id.* ¶ 6(J).

### 2. *Proceedings in this Court*

After the case was removed to this Court, the parties conducted discovery. Various discovery disputes were ruled on by the undersigned at a conference held on April 12, 2002. *See* Transcript of April 12, 2002 Conference, filed September 26, 2002, (Docket # 18). Following that conference, Chimarev filed a motion to compel discovery responses from TD Waterhouse. *See* Notice of Motion to Compel Defendant's Rule 26(a)(1) Disclosures and for Defamation Action, filed July 25, 2002 (Docket #. 15). That motion was granted in part and denied in part. *See* Order, filed September 26, 2002 (Docket # 16).

On October 11, 2002, Chimarev filed a motion to amend his complaint to add claims of age discrimination. *See* Notice of Motion to Amend the Complaint, filed October 11, 2002 (Docket # 20). The motion was denied by Judge Marrero on December 4, 2002. *See* Decision and Order, filed December 4, 2002 (Docket # 25). On November 4, 2002, prior to the decision on the motion to amend, Chimarev filed a motion for additional discovery pursuant to Fed.R.Civ.P. 56(f). *See* Plaintiff's Rule 56(f) Motion for a Continuance to Conduct Discovery and Brief in Support, filed November 4, 2002 (Docket # 22). This Court denied the motion because, *inter alia,* discovery had long since closed and Chimarev offered no reason to re-open it. *See* Order, filed December 10, 2002 (Docket # 26), at 1–2. Chimarev again sought leave to amend his complaint to add a claim for age discrimination, which was denied by Judge Marrero. *See* Memoran-

dum Endorsement, filed January 10, 2003 (Docket # 29).

TD Waterhouse filed the instant motion on February 19, 2003. *See* Def. Motion. In his opposition to the motion, Chimarev makes reference to his claim that he was the victim of age discrimination. *See, e.g.,* Pl. Op. at 8. Because his motion to amend was denied, however, such a claim is not part of his complaint and will not be considered further.

## II. *STANDARD OF REVIEW*

### A. *Motion to Dismiss Standard*

Dismissal pursuant to Fed.R.Civ.P. 12(b)(6) is appropriate "only if 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle [the plaintiff] to relief.'" *Ganino v. Citizens Utils. Co.,* 228 F.3d 154, 161 (2d Cir.2000) (quoting *Friedl v. City of New York,* 210 F.3d 79, 83 (2d Cir.2000)). All of plaintiff's allegations are accepted as true and all reasonable inferences are drawn in the plaintiff's favor. *See Halperin v. EBanker USA.com, Inc.,* 295 F.3d 352, 356 (2d Cir.2002). "At the 12(b)(6) stage, '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.'" *Chance v. Armstrong,* 143 F.3d 698, 701 (2d Cir.1998) (quoting *Branham v. Meachum,* 77 F.3d 626, 628 (2d Cir.1996)) (citation omitted). Nonetheless, the Court is not required to accept as true plaintiff's "'conclusions of law or unwarranted deductions of fact.'" *First Nationwide Bank v. Gelt Funding Corp.,* 27 F.3d 763, 771 (2d Cir.1994) (quoting 2A Moore & Lucas, *Moore's Federal Practice,* ¶ 12.08, at 2266–69 (2d ed.1984)) (citation omitted), *cert. denied,* 513 U.S.

1079, 115 S.Ct. 728, 130 L.Ed.2d 632 (1995).

When a plaintiff appears *pro se,* the complaint is viewed under "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972) (per curiam); *accord Hughes v. Rowe,* 449 U.S. 5, 9, 101 S.Ct. 173, 66 L.Ed.2d 163 (1980) (per curiam). The Court "must construe *pro se* complaints liberally, applying a more flexible standard to evaluate their sufficiency." *Lerman v. Bd. of Elections in City of New York,* 232 F.3d 135, 140 (2d Cir.2000) (citations and footnote omitted), *cert. denied,* 533 U.S. 915, 121 S.Ct. 2520, 150 L.Ed.2d 692 (2001). Thus, "[w]hen considering motions to dismiss a *pro se* complaint such as this, 'courts must construe [the complaint] broadly, and interpret [it] to raise the strongest arguments that [it] suggest[s].' " *Weixel v. Bd. of Educ. of City of New York,* 287 F.3d 138, 145–46 (2d Cir.2002) (quoting *Cruz v. Gomez,* 202 F.3d 593, 597 (2d Cir.2000)). However, proceeding *pro se* " 'does not exempt a party from compliance with relevant rules of procedural and substantive law.' " *Traguth v. Zuck,* 710 F.2d 90, 95 (2d Cir.1983) (quoting *Birl v. Estelle,* 660 F.2d 592, 593 (5th Cir.1981)).

B. *Summary Judgment Standard and the Parties' Submissions*

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

"An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.' " *Gayle v. Gonyea,* 313 F.3d 677, 682 (2d Cir.2002) (quoting *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505).

On a motion for summary judgment, all factual inferences must be drawn in favor of the non-moving party. *See, e.g., Savino v. City of New York,* 331 F.3d 63, 71 (2d Cir.2003) (citing *Anderson,* 477 U.S. at 255, 106 S.Ct. 2505). However, to survive a motion for summary judgment, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (emphasis omitted) (quoting Fed.R.Civ.P. 56(e)) (citation omitted). "Conclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact." *Kerzer v. Kingly Mfg.,* 156 F.3d 396, 400 (2d Cir.1998) (citation omitted). Thus, "[s]tatements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.,* 196 F.3d 435, 452 (2d Cir.1999) (citations omitted), *cert. denied,* 530 U.S. 1242, 120 S.Ct. 2688, 147 L.Ed.2d 960 (2000). In addition, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is ... insufficient to defeat summary judgment." *Niagara Mohawk Power Corp. v. Jones Chem. Inc.,* 315 F.3d 171, 175 (2d Cir.2003) (quoting *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505).

"In moving for summary judgment against a party who will bear the ultimate burden of proof at trial, the movant may satisfy [its] burden by pointing to an absence of evidence to support an essential element of the nonmoving party's claim." *Vann v. City of New York,* 72

F.3d 1040, 1048 (2d Cir.1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Thus, a party "moving for summary judgment must prevail if the [non-movant] fails to come forward with enough evidence to create a genuine factual issue to be tried with respect to an element essential to its case." *Allen v. Cuomo*, 100 F.3d 253, 258 (2d Cir.1996) (citing *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505). While the submissions of *pro se* litigants are liberally construed, *see, e.g., Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir.1994), the fact that Chimarev is "proceeding pro se does not otherwise relieve [him] from the usual requirements of summary judgment." *Fitzpatrick v. New York Cornell Hosp.*, 2003 WL 102853, at *5 (S.D.N.Y. Jan.9, 2003) (citing cases); *accord Johnson v. New York Hosp.*, 1998 WL 851609, at *8 (S.D.N.Y. Dec.9, 1998) (citing cases), *aff'd*, 189 F.3d 461 (2d Cir.1999).

■ In this case, TD Waterhouse submitted a statement of undisputed material facts as required by Local Rule 56.1. That rule provides that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party." Local Civil Rule 56.1(c). In addition, the Court gave Chimarev explicit instructions on how to respond properly to TD Waterhouse's motion. In a written Order, the Court notified Chimarev that he must respond separately to each allegation in TD Waterhouse's statement of undisputed material facts and that any disputed fact must be accompanied by reference to evidence. *See* Order, filed February 27, 2003 (Docket # 34), at 1 ("the plaintiff's statement opposing the defendant's Local Civil Rule 56.1 statement shall contain the following elements ... if a particular fact is denied, the plaintiff

shall cite to evidence supporting such denial that would be admissible under Federal Rule of Civil Procedure 56(e)."). This instruction was reiterated in a subsequent Order of the Court. *See* Memorandum Endorsement, filed March 14, 2003 (Docket # 35). Additionally, TD Waterhouse provided Chimarev with notice, as required by Local Civil Rule 56.2, of the requirements of responding to a motion for summary judgment. *See* Notice to Pro Se Litigant Opposing Motion for Summary Judgment, filed February 19, 2003 (Docket # 33). Despite these warnings, Chimarev submitted a statement that, while purporting to address the facts in TD Waterhouse's Statement, is deficient. *See* Pl. Opp. at 14–24. While the response offers blanket denials, it is not supported by citation to any evidence. Chimarev also included in his response a section entitled "Plaintiff's statement of additional material facts," *id.* at 33–40, which consists of a rehashing of his allegations. Moreover, in the vast majority of instances, this statement too cites to no admissible evidence. Thus, the material facts brought forward by TD Waterhouse are uncontested and may be accepted as true. *See* Local Civil Rule 56.1(c).

As a practical matter, however, and as described further below, Chimarev does not even purport to dispute the facts that are material to the Court's disposition of TD Waterhouse's motion. Indeed, summary judgment would have to be granted in TD Waterhouse's favor even accepting as true virtually all of the unsupported factual assertions set forth by Chimarev himself.

### III. *DISCUSSION*

As noted, Chimarev's complaint contains numerous claims for relief. For purposes of analysis, these claims are divided into federal and state law claims.

A. *Federal Claims*

1. *Title VII*

Chimarev's claims of harassment and abuse in the workplace, wrongful termination, and retaliation based on his national origin, are all related to the terms and conditions of his employment and are thus properly analyzed under Title VII. As such, the Court will examine these claims together.

Case law makes clear that "[a] plaintiff may bring an employment discrimination action under Title VII ... only after filing a timely charge with the [Equal Employment Opportunity Commission ('EEOC')] or with 'a State or local agency with authority to grant or seek relief from such practice.'" *Holtz v. Rockefeller & Co., Inc.*, 258 F.3d 62, 82–83 (2d Cir.2001) (quoting 42 U.S.C. § 2000e–5) (citation omitted); *accord Ghose v. Century 21, Inc.*, 108 F.Supp.2d 373, 375 (S.D.N.Y. 2000), *aff'd*, 2001 WL 682369 (2d Cir. June 14, 2001). Chimarev has admitted that he never brought any claims regarding discrimination to either the EEOC or the New York State Division of Human Rights. *See* Deposition of Aleksandre I. Chimarev, dated December 4, 2001 (reproduced in Reply Affirmation of Jonathan Stoler in Support of Defendant's Motion for Summary Judgment, filed May 19, 2003 (Docket # 38), Ex. B), at 19–20.

Chimarev did complain internally within TD Waterhouse. *See* Pl. Op. at 7 ("Plaintiff did indeed try[,] as best he could, to avail himself of justice within the administrative organs of the institution that had wronged him."). This is insufficient, however, to meet the filing requirements of Title VII. "[E]xhaustion of administrative remedies through the EEOC stands as 'an essential element of Title VII's statutory scheme,' ... and one with which defendants are entitled to insist that plaintiffs comply." *Francis v. City of New York*,

235 F.3d 763, 768 (2d Cir.2000) (quoting *Butts v. City of New York Dep't of Hous. Pres. and Dev.*, 990 F.2d 1397, 1401 (2d Cir.1993)). Chimarev cannot avoid the exhaustion requirement by relying on complaints within the company. Such actions do not substitute for the exhaustion requirement mandated by Title VII. Thus, Chimarev's claims under Title VII must be dismissed.

2. *Section 1981*

█ Chimarev makes a claim under 42 U.S.C. § 1981 in his complaint. *See* Complaint ¶ 5. This statute provides in relevant part that

> [a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a). Section 1981 does allow for claims of employment discrimination in many of the same forms as Title VII. *See, e.g., Taitt v. Chem. Bank*, 849 F.2d 775, 777 (2d Cir.1988); *Choudhury v. Polytechnic Inst. of New York*, 735 F.2d 38, 44 (2d Cir.1984). However, section 1981 does not prohibit discrimination based on national origin. *See Saint Francis College v. Al–Khazraji*, 481 U.S. 604, 613, 107 S.Ct. 2022, 95 L.Ed.2d 582 (1987); *Anderson v. Conboy*, 156 F.3d 167, 170 (2d Cir.1998), *cert. granted*, 526 U.S. 1086, 119 S.Ct. 1495, 143 L.Ed.2d 650, *cert. dismissed*, 527 U.S. 1030, 119 S.Ct. 2418, 144 L.Ed.2d 789 (1999); *Ghose*, 108 F.Supp.2d at 380. Because Chimarev's claims exclusively relate to discrimination based on

national origin, he cannot state a claim under section 1981.

### 3. *Failure to Pay*

Chimarev contends that TD Waterhouse failed to pay him overtime wages and failed to pay him at all after his termination. Complaint ¶ 6(J). The Fair Labor Standards Act ("FLSA") requires employers to pay certain employees additional wages for work performed beyond a 40–hour work week. *See* 29 U.S.C. § 207(a)(1). However, the FLSA does not require overtime wages to be paid to employees who are "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213(a)(1). The FLSA gives the Secretary of Labor the power to " 'defin[e] and delimi[t]' the scope of the exemption for executive, administrative, and professional employees." *Auer v. Robbins,* 519 U.S. 452, 456, 117 S.Ct. 905, 137 L.Ed.2d 79 (1997) (quoting 29 U.S.C. § 213(a)(1)). Chimarev cannot sue for overtime because the Secretary has exempted from the FLSA overtime provisions computer programmers who perform work directly related to a company's general business operations. *See* 29 C.F.R. § 541.205(c)(7). Chimarev has not contended that he was performing anything other than such work.

Even executive, administrative, or professional employees must be paid overtime if they are not compensated on a "salary basis." *See Yourman v. Giuliani,* 229 F.3d 124, 127 (2d Cir.2000) (citing *Auer,* 519 U.S. at 455, 117 S.Ct. 905) (citations omitted); *see also* 29 C.F.R. §§ 541.1(f), 541.2(e), 541.3(e) (defining "salary basis" for executive, administrative, and professional employees). Under the regulations, a salaried employee is one who "regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 C.F.R. § 541.118(a). Chimarev was employed by TD Waterhouse at an annual salary, as of December 1, 2000, of $76,000 per year. Def. 56.1 Statement ¶ 15; Chimarev Dep. at 103. He received his compensation on a semi-monthly basis. *See* Offer Letter at 1. There is no evidence to suggest that Chimarev was ever subject to a reduction in his compensation due to variations in the quality or quantity of the work he performed. Thus it is clear that Chimarev was paid on a "salary basis" and ineligible for overtime wages.

To the extent Chimarev is contending that he was not actually terminated and is still owed wages, such a contention would be frivolous. Chimarev's own complaint alleges that he was terminated, *see* Complaint ¶¶ 4(e), 6(D). Moreover, TD Waterhouse has adduced undisputed evidence that Chimarev was terminated on February 7, 2001. *See* Chin Letter at 1. To the extent Chimarev seeks a severance payment, Chimarev has failed to provide any evidence that he was contractually entitled to severance pay.

### 4. *Other Federal Statutes*

As noted, Chimarev cited a number of other federal statutes in his complaint. *See* Complaint ¶ 5. All of these, however, are irrelevant to this case.

The Walsh–Healey Public Contracts Act, 41 U.S.C. § 35 *et seq.,* deals with contracts made with the federal government and has no relation to private employment. The Portal–to–Portal Pay Act, 29 U.S.C. § 251 *et seq.,* gives courts authority to withhold damages otherwise recoverable under the FLSA where the employer shows to the satisfaction of the court that its violation was in good faith. *See, e.g., Lorillard v. Pons,* 434 U.S. 575, 581 n. 8, 98 S.Ct. 866,

55 L.Ed.2d 40 (1978). As no violation of the FLSA occurred here, this statute is inapplicable to Chimarev's situation. CO-BRA, 29 U.S.C. § 1161, only applies to claims regarding health benefits, which have not been raised in the complaint. Finally, the Contract Work Hours and Safety Standards Act, 40 U.S.C. § 328 *et seq.*, provides protections to laborers employed on construction projects and is thus irrelevant to Chimarev's case.

### B. *Chimarev's State Law Claims*

■ The remaining claims in Chimarev's complaint—fraud, breach of public policy, good faith and fair dealing, intentional infliction of emotional distress, breach of contract, and invasion of privacy—are state law claims brought under this Court's supplemental jurisdiction. When federal claims have been dismissed, a district court may decline to exercise jurisdiction when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Nonetheless, it retains authority to hear such claims. The factors a court should weigh in determining whether to retain supplemental jurisdiction over state law claims include "'judicial economy, convenience, fairness and comity.'" *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (quoting *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988)); *accord Roche v. John Hancock Mut. Life Ins. Co.*, 81 F.3d 249, 257 (1st Cir.1996).

■ In this case, discovery long ago concluded and motions have been made with respect to all of plaintiff's claims. Thus, judicial economy would not be served by permitting this case to be revived in state court. *See Nowak v. Ironworkers Local 6 Pension Fund*, 81 F.3d 1182, 1191–92 (2d Cir.1996) ("if the dismissal of the federal claim occurs 'late in the action, after there has been substantial expenditure in time, effort, and money in preparing the dependent claims, knocking them down with a belated rejection of supplemental jurisdiction may not be fair.'") (quoting *Purgess v. Sharrock*, 33 F.3d 134, 138 (2d Cir.1994), in turn quoting 28 U.S.C. § 1367, Practice Commentary at 835 (1993)). In addition, it would be convenient and fair to both parties to have the claims resolved now. Finally, deciding the claims now would not breach the comity owed to the courts of New York as the disposition of these claims is clear and merits little discussion. Thus, all the factors favor retaining supplemental jurisdiction over the remaining State law claims.

#### 1. *Public Policy*

Liberally construed, Chimarev's claim for "breach of public policy," Complaint ¶ 6(D), is a claim that TD Waterhouse breached the public policy of New York State by wrongfully discharging him. However, "New York does not recognize the tort of wrongful discharge ... [and] there is no exception for firings that violate public policy." *Lobosco v. New York Tel. Co./NYNEX*, 96 N.Y.2d 312, 316, 727 N.Y.S.2d 383, 751 N.E.2d 462 (2001) (citing *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 297, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983)). New York law is clear that an at-will employment relationship "may be freely terminated by either party at any time for any reason or even for no reason." *Murphy*, 58 N.Y.2d at 300, 461 N.Y.S.2d 232, 448 N.E.2d 86 (citations omitted). Accordingly, Chimarev cannot state a claim for breach of public policy.

#### 2. *Intentional Infliction of Emotional Distress*

Chimarev alleges that TD Waterhouse committed the tort of intentional infliction of emotional distress by preventing him

from attending meetings, slamming an office door, excluding him from social events, denying him his chosen workplace, not moving his equipment, and cutting off his workstation. *See* Complaint ¶ 6(F). Even assuming these allegations are true, they do not state a claim for intentional infliction of emotional distress. Nor has Chimarev submitted evidence that would support such a claim.

Under New York law, the tort of intentional infliction of emotional distress has four elements: "(i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress." *Howell v. New York Post Co.*, 81 N.Y.2d 115, 121, 596 N.Y.S.2d 350, 612 N.E.2d 699 (1993) (citations omitted). " 'Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Murphy*, 58 N.Y.2d at 303, 461 N.Y.S.2d 232, 448 N.E.2d 86 (quoting Restatement [Second] of Torts § 46. comment d).

Chimarev's allegations come nowhere near the type of conduct that is encompassed by this tort for the simple reason that nothing he describes qualifies as "extreme and outrageous" conduct. Indeed, courts have found deficient workplace-based claims of intentional infliction of emotional distress that involved far more egregious conduct. *See, e.g., La Duke v. Lyons*, 250 A.D.2d 969, 972–73, 673 N.Y.S.2d 240 (3d Dep't 1998) (false accusal of a nurse of euthanizing patients, terminating her, and forwarding those allegations to the District Attorney's office for investigation); *Herlihy v. Metro. Museum*

*of Art*, 214 A.D.2d 250, 262–63, 633 N.Y.S.2d 106 (1st Dep't 1995) (plaintiff subjected to ethnic epithets and sexual harassment). Chimarev's allegations, if accepted as true, demonstrate only that he was treated unfairly by his supervisors at TD Waterhouse.

Moreover, to the extent that Chimarev's allegations are based on his dismissal, he cannot state a claim for this tort because he was an at-will employee. *See Abeles v. Mellon Bank Corp.*, 298 A.D.2d 106, 747 N.Y.S.2d 372 (1st Dep't 2002) ("plaintiff was an at-will employee terminable from her position at any time and for any reason, or even for no reason at all, and thus was without recourse to sue, as she has, for wrongful discharge by means of a cause of action for intentional infliction of emotional distress") (citing *Murphy*, 58 N.Y.2d at 300, 303, 461 N.Y.S.2d 232, 448 N.E.2d 86).

### 3. *Breach of Contract and Fraud*

Chimarev alleges that TD Waterhouse breached a purported employment contract with him. Complaint ¶ 6(G). However, no employment contract was ever created between Chimarev and TD Waterhouse. Contrary to Chimarev's assertion, TD Waterhouse explicitly notified Chimarev that he was an at-will employee and his "employment with [TD Waterhouse] . . . will not be for any specified term and may be terminated at any time, with or without cause and with or without notice, by you or the Company for any reason." Offer Letter at 2. Chimarev signed this letter with the above-quoted language. *Id.* He has provided no evidence controverting this documentation. Under New York law, "[a]bsent an agreement establishing a fixed duration, an employment relationship is presumed to be a hiring at will, terminable at any time by either party." *De Petris v. Union Settlement Assoc., Inc.*, 86

N.Y.2d. 406, 410, 633 N.Y.S.2d 274, 657 N.E.2d 269 (1995) (citing *Sabetay v. Sterling Drug,* 69 N.Y.2d 329, 333, 514 N.Y.S.2d 209, 506 N.E.2d 919 (1987)). As Chimarev was an at-will employee, he cannot maintain an action for breach of contract. *See, e.g., Minton v. Lenox Hill Hosp.,* 160 F.Supp.2d 687, 699 (S.D.N.Y. 2001).

Chimarev's fraud claim alleges that TD Waterhouse engaged in a misrepresentation when it hired him because its purpose was only to transfer his "know-how" to other workers. Complaint ¶ 6(C). Under New York law, a claim of fraud requires, among other elements, that the plaintiff demonstrate reasonable reliance upon a false statement. *See Cohen v. Koenig,* 25 F.3d 1168, 1172 (2d Cir.1994); *Channel Master Corp. v. Aluminium Ltd. Sales, Inc.,* 4 N.Y.2d 403, 406–07, 176 N.Y.S.2d 259, 151 N.E.2d 833 (1958). In this case, Chimarev cannot "establish the reasonable reliance element since [his] offered employment was at-will." *Arias v. Women in Need, Inc.,* 274 A.D.2d 353, 354, 712 N.Y.S.2d 103 (1st Dep't 2000) (citation omitted); *see also Tannehill v. Paul Stuart, Inc.,* 226 A.D.2d 117, 118, 640 N.Y.S.2d 505 (1st Dep't 1996) ("it cannot be said that plaintiff reasonably relied on defendant's representation, because the offered employment was at will") (citing cases). In any event, it is unclear what false statement was at issue as employers typically hire workers with skills in order to obtain the benefit of those skills, including the teaching of such skills to other workers. To the extent Chimarev questions the motives of TD Waterhouse, those motives are not relevant to a claim of fraud. Notably, Chimarev has adduced no evidence to support this claim other than his own speculation.

### 4. *Invasion of Privacy*

Chimarev also alleges that TD Waterhouse violated his privacy by allowing his computer to be accessed by supervisors and by preventing him from accessing his workplace. Complaint ¶ 6(H). In New York, "the right to privacy is governed exclusively by sections 50 and 51 of the Civil Rights Law; [New York has] no common law of privacy." *Howell,* 81 N.Y.2d at 123, 596 N.Y.S.2d 350, 612 N.E.2d 699 (citing cases); *see also Groden v. Random House, Inc.,* 61 F.3d 1045, 1049 (2d Cir. 1995) ("In New York, there is no common-law right of privacy ... and sections 50 and 51 afford the only available remedy.") (citations omitted); *accord Hurwitz v. United States,* 884 F.2d 684, 687 (2d Cir. 1989), *cert. denied,* 493 U.S. 1056, 110 S.Ct. 865, 107 L.Ed.2d 949 (1990); *Richardson v. Newburgh Enlarged City Sch. Dist.,* 984 F.Supp. 735, 748 (S.D.N.Y.1997). Section 50 of the Civil Rights Law prohibits the unauthorized commercial use of a private person's "name, portrait or picture" without prior written consent, N.Y. Civil Rights L. § 50, while section 51 provides a private right of action to a person aggrieved under section 50. *See* N.Y. Civil Rights L. § 51. Chimarev's claims do not assert any act that could conceivably be within the reach of sections 50 and 51 of the Civil Rights Law. As his allegations do not fit within the limited right of privacy recognized in New York, Chimarev cannot state a claim for invasion of privacy.

### 5. *Other State Statutes*

Chimarev also makes reference to a number of sections of the New York State Labor Laws. *See* Complaint ¶ 5 (citing N.Y. Labor L. §§ 190–99, 219–20, 700–19). For the reasons stated below, none of these statutes are applicable to Chimarev's claims and do not afford him any relief.

Among sections 190 through 199 of the New York Labor Laws, the only possibly

relevant provisions are those that establish requirements for the timing of payment of wages. *See* N.Y. Labor L. §§ 191, 191–b, 191–c. Under these provisions, TD Waterhouse was required to pay Chimarev "not less frequently than semi-monthly." N.Y. Labor L. § 191(d). However, Chimarev was paid on a semi-monthly basis, *see* Offer Letter at 1, and, thus, TD Waterhouse complied with this provision. Section 219 of the Labor Law is irrelevant because it deals solely with the ability of the Secretary of Labor to bring an action against an employer. Section 220 of the Labor Law covers only contracts that involve public works projects. Sections 700 to 719 of the Labor Law concern collective bargaining arrangements between employers and labor organizations and are similarly inapplicable.

Finally, Chimarev refers to section 3221(m) of the New York State Insurance Law. *See* Complaint ¶ 5. This statute concerns the availability of group medical insurance policies for terminated employees. As noted in Section III.A.4, Chimarev has made no claim regarding his medical insurance.[1]

*Conclusion*

For the foregoing reasons, TD Waterhouse's motion for summary judgment should be granted and the case should be dismissed. It is thus unnecessary to decide the defendant's motion to dismiss the complaint for failure to state a claim. Chimarev's cross-motion for summary judgment should be denied.

**PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report to file any objections. *See also* Fed.R.Civ.P. 6(a), (e). Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with copies sent to the Honorable Victor Marrero, 40 Centre Street, New York, New York 10007, and to the undersigned at the same address. Any

---

1. Chimarev's papers make repeated complaints about the scope of TD Waterhouse's disclosure during discovery and invoke Fed. R.Civ.P. 56(f) in an effort to obtain additional discovery. *See, e.g.,* Pl. Op. at 9, 12–13, 33, 40–42; Plaintiff's Memorandum of Law in Further Support of Plaintiff's Cross–Motion for Summary Judgment and Reply to Defendant's Memorandum of Law, dated June 5, 2003, at 4–6, 7–8, 28. For the reasons stated in this Court's Order of December 10, 2002, however, Chimarev is not entitled to further discovery as he was provided with ample opportunity to take such discovery. To the extent that Chimarev is invoking Rule 56(f) to obtain a new opportunity to conduct discovery, his request is rejected. Rule 56(f) "applies to summary judgment motions made *before* discovery is concluded." *McAllister v. New York City Police Dep't,* 49 F.Supp.2d 688, 696 n. 5 (S.D.N.Y.1999) (emphasis added) (citations omitted); *accord McNerney v. Archer Daniels Midland Co.,* 164 F.R.D. 584, 588

(W.D.N.Y.1995) ("Applications to extend the discovery deadline must be made prior to expiration of the deadline ... Rule 56(f) is not intended to circumvent discovery orders.").

In addition, Chimarev has not submitted any affidavit or other document that establishes what information could be unearthed by further discovery. "[A] party resisting summary judgment on the ground that it needs discovery in order to defeat the motion must submit an affidavit showing '(1) what facts are sought [to resist the motion] and how they are to be obtained, (2) how those facts are reasonably expected to create a genuine issue of material fact, (3) what effort affiant has made to obtain them, and (4) why the affiant was unsuccessful in those efforts.'" *Gurary v. Winehouse,* 190 F.3d 37, 43 (2d Cir.1999) (quoting *Meloff v. N.Y. Life Ins. Co.,* 51 F.3d 372, 375 (2d Cir.1995)) (citations omitted). Chimarev's speculation that TD Waterhouse is concealing facts is insufficient to meet these requirements.

request for an extension of time to file objections must be directed to Judge Marrero. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

July 17, 2003.