**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 23-1680
_____

ABIGAIL P., through her Parent, Sarah F.,
Appellant

v.

OLD FORGE SCHOOL DISTRICT
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. No. 3-21-cv-02033)
Magistrate Judge: Honorable Karoline Mehalchick
_____

Argued on February 8, 2024

Before: HARDIMAN, SCIRICA, and RENDELL, *Circuit
Judges*.

(Filed: June 26, 2024)

Dennis C. McAndrews
Michael J. Connolly
Jacqueline C. Lembeck [**ARGUED**]

D. Daniel Woody
McAndrews Mehalick Connolly Hulse & Ryan
30 Cassatt Avenue
Berwyn, PA 19312
    *Counsel for Appellant*

Michael D. Raffaele
Raffaele & Associates
1230 County Line Road
Bryn Mawr, PA 19010
    *Counsel for Amici Curiae Education Law Center of
    Pennsylvania, American Civil Liberties Union of
    Pennsylvania, ARC Alliance, and ARC of Pennsylvania
    in Support of Appellant*

Thomas A. Specht [**ARGUED**]
Marshall Dennehey Warner Coleman & Goggin
P.O. Box 3118
Scranton, PA 18505
    *Counsel for Appellee*

_____

OPINION OF THE COURT
_____

**HARDIMAN**, *Circuit Judge*.

This appeal requires us to decide whether a disabled child received a free appropriate public education (FAPE) during the COVID-19 pandemic. Through her mother, Abigail P. filed a due process complaint against the Old Forge School District under the Individuals with Disabilities Education Act

(IDEA), Section 504 of the Rehabilitation Act, and Pennsylvania state law. She claimed Old Forge denied her a FAPE when the school district moved to remote instruction during the pandemic. Both a hearing officer appointed by the Pennsylvania Department of Education and the District Court disagreed. We will affirm.

I

A

Abigail suffers from severe disabilities. Her epilepsy, autism, global developmental delays, and other disabilities substantially impair her ability to participate in school without intensive, specially designed instruction and ample support from teachers, therapists, and other staff. Though she was nine years old during the 2020–21 school year, Abigail's intellectual, language, and visuospatial functioning placed her below the 0.1 percentile of her age group—cognitively equivalent to a typical two- or three-year-old child. Because she is generally non-verbal and "has significant expressive/receptive and pragmatic language delays," App. 360, Abigail requires speech and language therapy, occupational therapy, physical therapy, applied behavioral analysis programming, aided language output (*e.g.*, picture cards to help her communicate), and a full-time autism support program. She often engages in self-harm (*e.g.*, head-butting and punching herself in the chin) and physical aggression toward others. Yet Abigail remains "capable of developing and learning, albeit at an individualized pace in comparison to her typical age and grade peers." App. 371.

Before the COVID-19 pandemic, a neuropsychologist and a speech-language pathologist evaluated Abigail and

3

issued reports providing detailed recommendations for her education. Although the neuropsychologist noted Abigail "does well and has a preference for learning on . . . iPads," *id.*, neither specialist addressed the possibility of remote education for Abigail. Instead, they emphasized the benefits of "[v]isual and tactile stimuli," App. 373, "hands-on, physical, or sensory activities," *id.*, and "physical . . . circles of interaction," App. 405. In considering Abigail's academic programming, Old Forge reviewed both reports and acknowledged that they identified Abigail's educational needs.

B

Old Forge began the 2020–21 academic year with in-person learning. Two days before Thanksgiving, a student in Abigail's school tested positive for COVID-19. The next day, consistent with guidelines issued by agencies of the Commonwealth of Pennsylvania, Old Forge moved all of its schools to remote instruction and continued to provide remote instruction throughout December. On January 8, 2021, these agencies amended their prior guidelines to permit elementary and at-risk students to resume in-person instruction beginning on February 1, provided it was safe to do so based on factors such as transmission rates and building facilities. However, the Old Forge School Board delayed the return to in-person education for an additional two weeks because of high positivity rates in the area. As a result, Old Forge provided remote instruction from November 25, 2020 until February 16, 2021, plus four more days during the spring of 2021 to allow for "a specialized cleaning" of its schools. App. 128.

Both the Old Forge School District Superintendent and its Director of Special Education recognized that in-person education was optimal for Abigail, as one of their most at-risk

4

students. But despite a specific request by Abigail's mother, Old Forge prevented Abigail and the four other disabled students in her class from attending class in person, citing public health concerns. During this period, the school district permitted in-person varsity basketball practices to resume beginning on January 4, 2021, so the teams would remain eligible for the district and state playoffs.

C

Throughout Old Forge's period of remote instruction, an individualized education plan (IEP) was in place for Abigail. The IEP included annual goals and detailed metrics on how progress was to be measured, in addition to specially designed instruction and program modifications. It specified that Abigail would receive related services, including three half-hour sessions each week for both speech/language therapy and occupational therapy as well as one half-hour session each week for both physical therapy and adaptive physical education.

After the IEP team[1] implemented revisions in December to reflect the shift to remote instruction, the IEP stated that

---

[1] Under the IDEA, an IEP team is responsible for "meet[ing] and writ[ing] the IEP considering the strengths of the child, the concerns of the parent, and the most recent evaluation of the child." *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 264 (3d Cir. 2003) (citing 20 U.S.C. § 1414(d)(3)). At a minimum, the team must include "the child's parents, at least one special education teacher of the child, a specialist in developing curriculum from the local district, and at the request of the parent or the school district, anyone with special

Abigail would have Zoom sessions five days per week, with optional Google classroom assignments four days per week. Two days per week, Abigail's mother opted to have Abigail participate in circle (*i.e.*, group) time instead of occupational therapy because of a scheduling conflict. One behavioral goal related to following schedules was "placed on hold" because it could not "be monitored appropriately in a virtual setting." App. 503. For similar reasons, the monitoring of Abigail's completion of instructional tasks throughout the day was slightly reduced. Abigail's mother agreed to each of these revisions. *See* App. 258, 467.

D

When she attended school in person, Abigail was in an autism support classroom from 8:25 a.m. to 2:30 p.m. There, she participated in group activities with social and emotional components and received individualized instruction in reading and math. Abigail also received "support services and adapted gym." App. 225.

After Old Forge moved to remote instruction, Abigail generally continued to receive these services, *see* App. 226, 244–45, including the full amount of physical therapy and speech therapy, *see* App. 251–54. "Boom cards[2] were still provided," and "[m]atching Velcro activities were sent home." App. 287. Abigail also received "a dry erase[] marker and letters and numbers," so she could practice writing every day.

---

knowledge or expertise related to the child's education." *Id.* (citing 20 U.S.C. § 1414(d)(1)(B)).

[2] Boom cards are interactive activities that can be accessed via a computer app.

*Id.* And circle time increased slightly to between 30 and 40 minutes each day. *Id.*

As compared to normal school, however, Abigail received less one-on-one instruction—only about 15 minutes each of math and reading per day. On some of the days, an aide provided the instruction instead of a certified special education teacher. Abigail struggled to engage with remote instruction, even with the in-person support of a behavioral health technician and a nurse, and her physical therapy sessions focused on using the stairs at home, which were very familiar to her and thus did not present a challenge. She also no longer received the benefit of spending time with non-disabled students. And although she made some progress toward her academic goals, she also experienced some regression, especially behaviorally. Abigail's inappropriate behavior decreased to its prior levels only several months after Old Forge returned to in-person instruction.

At the end of the school year, Old Forge offered Abigail compensatory education for at least some of her related services. Abigail's mother declined that offer because she had already made plans for Abigail to attend a summer camp designed to address any educational deficits that arose because of remote instruction.

E

On March 4, 2021, Abigail filed an administrative complaint with the Pennsylvania Department of Education and requested a special education due process hearing. She claimed she had been denied a FAPE under the IDEA and that Old Forge had violated Section 504 of the Rehabilitation Act and

7

Pennsylvania state law.[3] In her view, Old Forge had "offered only minimal virtual instruction, which Abigail was not able to appropriately access." App. 620. Following a one-day hearing, the Administrative Hearing Officer denied all requested relief after concluding that Old Forge had not denied Abigail a FAPE.

Following an appeal under 20 U.S.C. § 1415(i)(2), the District Court affirmed the Hearing Officer's decision. *See Abigail, P. ex rel. Sarah F. v. Old Forge Sch. Dist.*, 2023 WL 2505011, *7–18 (M.D. Pa. Mar. 14, 2023). Abigail filed this timely appeal.[4]

## II[5]

"We require a district court to apply a nontraditional standard of review when considering an appeal from a state administrative decision under [the] IDEA." *Mary T. v. Sch. Dist. of Phila.*, 575 F.3d 235, 241 (3d Cir. 2009). "Although

---

[3] Abigail's mother also asserted a disability discrimination claim under Section 504 of the Rehabilitation Act. She abandoned that claim in the District Court.

[4] On appeal, Abigail does not argue that Old Forge violated Pennsylvania law. And as the District Court correctly recognized, *Abigail, P.*, 2023 WL 2505011, at *16–17, concluding that Abigail is not denied a FAPE "is equally dispositive of [her] [Section] 504 claim," *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 253 n.8 (3d Cir. 2012). For these reasons, we resolve this case under the IDEA.

[5] The District Court had jurisdiction under 28 U.S.C. § 1331. We have jurisdiction under 28 U.S.C. § 1291.

the District Court must make its own findings by a preponderance of the evidence, the District Court must also afford due weight to the [administrative law judge's] determination." *Shore Reg'l High Sch. Bd. of Educ. v. P.S. ex rel. P.S.*, 381 F.3d 194, 199 (3d Cir. 2004) (cleaned up). "Factual findings from the administrative proceedings are to be considered prima facie correct," and if a district court "fails to adhere to them, it is obliged to explain why." *S.H. v. State-Operated Sch. Dist. of City of Newark*, 336 F.3d 260, 270 (3d Cir. 2003) (citations omitted).

Within the confines of this "modified *de novo*" review, *id.*, we exercise plenary review over the District Court's conclusions of law, *Warren G. ex rel. Tom G. v. Cumberland Cnty. Sch. Dist.*, 190 F.3d 80, 83 (3d Cir. 1999). We review factual findings for clear error, including the Court's determination of whether an IEP is appropriate. *See D.S. v. Bayonne Bd. of Educ.*, 602 F.3d 553, 564 (3d Cir. 2010). And we must accept the Hearing Officer's credibility determinations "unless the nontestimonial, extrinsic evidence in the record . . . justif[ies] a contrary conclusion." *D.K. v. Abington Sch. Dist.*, 696 F.3d 233, 243 (3d Cir. 2012) (citation omitted).

On appeal, Abigail argues the District Court erred in concluding that the Hearing Officer: (1) properly applied the FAPE standard; and (2) correctly determined that Old Forge provided a FAPE to Abigail during remote instruction. We consider each argument in turn.

### III

Abigail first claims "[t]he District Court failed to apply plenary review to determine whether the Hearing Officer

applied the correct standard of FAPE to [her] individualized education." Abigail P. Br. 19. She describes "[t]he Hearing Officer's decision [as] replete with allowances and excuses for [Old Forge's] virtual programming based solely on the pandemic and ignoring [Abigail's] overwhelming needs." Abigail P. Br. 21. The record belies this characterization.

Citing *Endrew F. ex rel. Joseph F. v. Douglas County School District RE-1*, 580 U.S. 386 (2017), the Hearing Officer accurately stated the FAPE standard at the outset of his analysis: "the parent can prove that a student's individualized education plan is not appropriate by showing that it was not reasonably calculated to confer meaningful educational benefit in light of the student's unique individual circumstances at the time that it was written." App. 78–79. Based on this standard, he proceeded to evaluate the reasonableness of the IEP in this way:

> At the time that they were written, the student's IEPs were clearly designed to meet the student's needs. The student's IEPs adopted many of the recommendations contained in the independent educational evaluation of the student. The IEPs included academic goals and goals to address the student's behavioral and social/emotional needs. The IEPs included appropriate specially designed instruction and modifications. The IEPs provided the related services of speech/language, physical therapy, occupational therapy and adaptive physical education.

App. 79. Although the Hearing Officer recognized that the remote instruction "took place during a deadly public health crisis," App. 82, he never excused Old Forge from providing Abigail with a FAPE. So the District Court did not err in concluding that the Hearing Officer correctly applied the FAPE standard in his decision.

## IV

We turn next to the claim that Old Forge did not provide a FAPE to Abigail during remote instruction, either because it: (1) created an IEP that was not reasonably calculated to yield meaningful educational progress; or (2) failed to fully implement the IEP.

## A

The IDEA requires States to "make available a free and appropriate public education to all children with disabilities residing within their borders." *D.S.*, 602 F.3d at 556. The statutory definition of a FAPE includes both "special education," "specially designed instruction . . . to meet the unique needs of a child with a disability"; and "related services," which are "required to assist a child . . . to benefit from" special education. 20 U.S.C. § 1401(9), (26)(A), (29).

"The IEP is the centerpiece of the [IDEA's] education delivery system for disabled children" and "the means by which special education and related services are tailored to the unique needs of a particular child." *Endrew F.*, 580 U.S. at 391 (cleaned up). To be sufficient under the IDEA, an IEP must be "reasonably calculated to enable a child to make progress appropriate *in light of the child's circumstances*." *Id.* at 399 (emphasis added). "Though the IEP must provide the student

11

with a basic floor of opportunity, it need not necessarily provide the optimal level of services that parents might desire for their child." *D.S.*, 602 F.3d at 557 (cleaned up).

B

Because the District Court had to regard the Hearing Officer's factual findings as prima facie correct, *see S.H.*, 336 F.3d at 270, we first identify the relevant factual findings.

> The [independent neuropsychological] report makes a number of recommendations, many of which were implemented by the school district in [Abigail's] IEPs. . . . [Abigail's] IEP includes goals for number and letter matching, a social/emotional goal and two behavioral goals. In addition, the IEP provides for a number of modifications and specially designed instruction. The IEP also provides for the related services of speech/language therapy, occupational therapy, physical therapy and adaptive physical education. . . . In addition to time with the teacher and paraprofessionals, the student received related services during virtual instruction. The student's . . . speech therapy went very well during this period of time. The student also received . . . occupational therapy and physical therapy during virtual instruction.

App. 71–73 (citations omitted).

Abigail argues that these findings relied on "minimal, unsupported and equivocal testimony in the record." Abigail P. Br. 24. We disagree. In the absence of non-testimonial

12

evidence in the record contradicting this testimony, we must credit the Hearing Officer's credibility determinations, including his conclusion that the testimony of Old Forge staff was more credible and persuasive than that of Abigail's mother. *See P.S.*, 381 F.3d at 199. This is especially true because Abigail's mother repeatedly claimed, contrary to documentary evidence later submitted by Old Forge, that she paid for the nurse who was present with Abigail during remote instruction.

The IDEA requires us to consider "the appropriateness of an IEP *as of the time it was made*," *D.S.*, 602 F.3d at 564 (emphasis added) (citation omitted), while leaving the manner in which a student is educated to the discretion of school administrators, *see Ridley Sch. Dist. v. M.R.*, 680 F.3d 260, 278–79 (3d Cir. 2012). At the time it was written, and agreed to by her mother, Abigail's IEP was designed to provide her with the capacity for "meaningful educational benefits." *P.S.*, 381 F.3d at 182. It adopted many of the recommendations contained in the independent educational evaluations, incorporated suitable academic and behavioral goals, and provided for appropriate related services. In light of the Hearing Officer's factual findings, the District Court did not clearly err in concluding Abigail's IEPs were "reasonably calculated to enable a child to make progress appropriate in light of the child's circumstances." *Endrew F.*, 580 U.S. at 399.

C

In addition to her critique of the IEP's content, Abigail claims it was not implemented properly. When a party challenges the implementation of an IEP, "the heart of [the] issue [i]s . . . whether any deviation whatsoever from an IEP necessarily violates the IDEA, and—if not—how far is too

far." *L.J. ex rel. N.N.J. v. Sch. Bd. of Broward Cnty.*, 927 F.3d 1203, 1211 (11th Cir. 2019). Several of our sister courts have held that "a party challenging the implementation of an IEP must show more than a *de minimis* failure to implement all elements of that IEP, and, instead, must demonstrate that the school board or other authorities failed to implement *substantial or significant provisions* of the IEP." *Houston Indep. Sch. Dist. v. Bobby R.*, 200 F.3d 341, 349 (5th Cir. 2000) (second emphasis added); *see, e.g.*, *Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 822 (9th Cir. 2007); *Sumter Cnty. Sch. Dist. 17 v. Heffernan ex rel. TH*, 642 F.3d 478, 484 (4th Cir. 2011); *L.J.*, 927 F.3d at 1211. We agree and hold as much here.

The text of the IDEA "counsels against making minor implementation failures actionable given that 'special education and related services' need only be provided '*in conformity with*' the IEP." *Van Duyn*, 502 F.3d at 821 (quoting 20 U.S.C. § 1401(9)). "The phrase 'in conformity with' suggests that general agreement or congruence, not perfect adherence, is the standard." *L.J.*, 927 F.3d at 1212 (citations omitted). Indeed, a requirement of perfect adherence "would ignore the realities and the challenges that the IDEA was built to accommodate." *Id.* at 1213. A materiality standard "affords local agencies some flexibility" while still "hold[ing] those agencies accountable for material failures and for providing the disabled child a meaningful educational benefit." *Bobby R.*, 200 F.3d at 349.

Abigail asserts that Old Forge implemented "drastic changes to the frequency and duration of [her] special education and related services." Abigail P. Br. 25. At oral argument, counsel claimed Old Forge: (1) eliminated all of Abigail's specially designed behavioral instruction during

14

online learning, Oral Arg. 10:02–10:10; (2) failed to deliver the full amount of related services, *id.* at 10:52–11:00; and (3) reduced Abigail's daily instructional time from more than six hours to just over one hour, *id.* at 10:36–52. These contentions lack sufficient support in the record to overcome clear-error review.

Although Abigail's teacher explained *she* was not implementing "anything that was behavioral," App. 300, Abigail did receive—in accordance with her IEP—behavior tech and Board Certified Behavior Analyst services from Beyond Behavioral Consulting. App. 243, 412, 472. Abigail also received the full amount of physical therapy and speech therapy during remote instruction. And when she missed occupational therapy sessions, it was because her mother chose to have Abigail attend circle time instead. App. 251–54.

Finally, Abigail received only a "slight decrease" in her daily instructional time during remote instruction, where she worked with her teacher on the computer for an hour and 10 minutes each day. *Abigail, P.*, 2023 WL 2505011, at *2–3. Abigail disputes this, emphasizing that her in-person school day lasted from 8:25 a.m. to 2:30 p.m. But not all of that in-person time consisted of individualized instruction with her teacher: it included breakfast and lunch as well as related services and "independent activities" to "practice what [she] had been working on during the one-on-one session[s]." App. 285. Abigail received most of her related services during remote instruction, and Old Forge provided her with boom cards, matching Velcro activities, and a dry erase marker with letters and numbers, so she could continue to do independent activities during the school day.

None of this suggests that Abigail's remote learning program was ideal; it was inferior to in-person instruction. But Abigail has failed to identify a failure by Old Forge to implement substantial or significant provisions of her IEP. So her challenge to the implementation thereof must fail.

V

We conclude by addressing the assertion made by amici curiae in support of Abigail that the District Court's decision "suggests the perverse result" that a school district may provide remote instruction under "any circumstance[s]." Amici Br. 14. We disagree, and nothing in our opinion today should be construed to support this extreme claim.

Remote instruction is not a per se violation of the IDEA. *See Bouabid v. Charlotte-Mecklenburg Schs. Bd. of Educ.*, 62 F.4th 851, 860 (4th Cir. 2023) (describing the IDEA as setting forth "a practical standard which must be applied in the day-to-day vortex of an up-and-down school year"). But as we have emphasized already, a school district is *never* relieved of its legal obligations under the IDEA. Our holding today does not give school districts carte blanche to reduce a disabled student's school day "for any reason . . . or no reason at all." Amici Br. 14. Rather, school districts may do so only if they continue to offer an educational program reasonably calculated to confer meaningful educational benefits *in light of the child's individual circumstances*. As counsel acknowledged at oral argument, such circumstances can surely be affected by a global pandemic. *See* Oral Arg. 30:00–30:20.

Our opinion and judgment address only Old Forge's legal obligations. Whether its system-wide decisions are sound

16

as a matter of educational policy is beyond our purview. *See S.H.*, 336 F.3d at 270 (citation omitted).

\* \* \*

For the reasons stated, the District Court correctly concluded that the Hearing Officer did not misapply or relax the FAPE standard due to the COVID-19 pandemic. Nor did it clearly err in affirming the Hearing Officer's conclusion that Old Forge provided a FAPE to Abigail throughout the period of remote instruction. We will affirm.