**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-3311
_____

R. S., by and through his parents; M. S.; N. S., in their own right,

 Appellants

v.

EAST BRUNSWICK SCHOOL DISTRICT

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.N.J. Civil Action No. 3:23-cv-21258)
District Judge: Honorable Michael A. Shipp

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
September 17, 2025

Before:  KRAUSE, PHIPPS, and ROTH, Circuit Judges

(Opinion filed March 2, 2026)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Pro se appellants M.S. and N.S. appeal from the District Court's grant of summary judgment for defendant East Brunswick School District on their claims regarding the education provided to their minor child, R.S., at his public school. For the reasons that follow, we will affirm the District Court's judgment.

I.

R.S. is a nine-year old child who has been diagnosed with Down Syndrome and an expressive-receptive language disorder.[1] Beginning at age three, R.S. began receiving special education services through the School District. The Individuals with Disabilities Education Act ("IDEA") required the School District to provide R.S. with a free appropriate public education ("FAPE"), which included designing and implementing an Individualized Education Plan ("IEP") for him. See 20 U.S.C. §§ 1412(a)(1), 1414(d)(2)(A).

Pursuant to his annually issued IEP for his first three years, R.S. attended school in self-contained special education classrooms for the full school day. M.S. and N.S. requested that R.S. repeat kindergarten for the 2020-2021 school year, which he did virtually from home due to the COVID-19 pandemic.

For the 2021-2022 school year, M.S. and N.S. initially withdrew R.S. from the

---

[1] Because we write primarily for the parties, we will recite only the facts necessary for this discussion. These facts are undisputed unless otherwise noted.

2

School District and homeschooled him while waiting for him to become eligible for the COVID-19 vaccine, as remote learning was no longer an option. R.S. was re-enrolled in December 2021. He was placed in the general education setting for most of the day, except for 45 minutes per day in a self-contained autism classroom. He was provided with speech, occupational, and physical therapy, as well as a one-to-one aide for the entire school day, and the curriculum was modified in numerous ways to support R.S.'s education. Staff also identified that R.S. could benefit from an Augmentative and Alternative Communication ("AAC") evaluation for an assistive device, and the School District provided him with an iPad to use in the meantime to assist with his communication.

However, even with the supports he received, R.S. had difficulty adjusting to the transition and struggled with significant behavioral issues. The School District conducted several evaluations in advance of his next IEP meeting, which was held in April 2022. At the meeting, M.S. and N.S. and the School District discussed the draft IEP, which proposed moving R.S. to a self-contained autism classroom for language arts and math for 3 hours out of the 6.5-hour school day. In June 2022, R.S. began his new classroom placement, and he also received an AAC device to help him communicate. M.S. and N.S. requested that the School District reconsider the decision to change R.S.'s classroom placement, but the School District denied the request.

In July 2022, M.S. and N.S. filed a complaint with the New Jersey Department of

Education, Office of Special Education Programs. They asked to keep R.S. in his prior education setting under the stay-put provision of the IDEA while they adjudicated their complaint, but their request was denied as untimely. Over the course of six days of remote hearings in 2023, an Administrative Law Judge ("ALJ") from the Office of Administrative Law took testimony from numerous witnesses regarding R.S.'s placement. The ALJ heard from School District staff who conducted assessments of R.S., as well as R.S.'s teachers. M.S. and N.S. presented two expert witnesses, each of whom observed R.S. for a portion of one school day and at home, and N.S. also testified.

Because the IDEA includes a mainstreaming component in defining a FAPE, mandating that children must be educated in the least restrictive environment that is appropriate for them, the ALJ was required to consider whether R.S. was denied a FAPE in the least restrictive environment. See 20 U.S.C. § 1412(a)(5)(A); S.H. v. State-Operated Sch. Dist. of City of Newark, 336 F.3d 260, 265 (3d Cir. 2003). The ALJ concluded that the School District witnesses testified credibly and consistently with the documentation in the record and with each other, and that Appellants' experts did not discredit the School District's witnesses. The ALJ observed that even with all the supports that were in place, R.S. was struggling in the general education environment. Thus, the ALJ concluded that placement in the self-contained autism classroom for part of the day was the least restrictive placement for R.S. to make progress in math and language arts.

With the assistance of counsel, M.S. and N.S. filed a federal complaint on their own behalf and on behalf of R.S., bringing claims pursuant to the IDEA, the Americans with Disabilities Act of 1990 ("ADA"), and Section 504 of the Rehabilitation Act of 1973 ("Section 504").[2] The parties sought summary judgment, which the District Court granted on the administrative record in favor of the School District. M.S. and N.S. timely appealed, now proceeding pro se.

## II.

We have jurisdiction pursuant to 28 U.S.C. § 1291. In our review, we remain mindful of the "due weight to the [ALJ's] determination" that a district court must afford when considering an appeal from a state administrative decision under the IDEA, including its obligation to consider factual findings from that proceeding to be "prima facie correct." See Abigail P. ex rel. Sarah F. v. Old Forge Sch. Dist., 105 F.4th 57, 63 (3d Cir. 2024) (citation omitted). Applying a "modified de novo review," we exercise plenary review over the District Court's legal conclusions and review its factual findings for clear error. Id. (internal quotation marks and citation omitted).

## III.

We agree with the District Court's entry of judgment for the School District. First, we note that pro se appellants cannot pursue claims on behalf of their children. See Osei-

---

[2] The complaint also included a claim under the New Jersey Law Against Discrimination, but appellants do not address this claim on appeal and have thus forfeited it. See In re Wettach, 811 F.3d 99, 115 (3d Cir. 2016).

5

<u>Afriyie v. Med. Coll. of Pa.</u>, 937 F.2d 876, 882–83 (3d Cir. 1991) (holding that a non-lawyer appearing pro se "was not entitled to play the role of attorney for his children in federal court"). Because the claims brought in the District Court under Section 504 and the ADA were based entirely on alleged injuries to R.S., M.S. and N.S. cannot pursue these claims pro se on his behalf on appeal.

However, we review M.S. and N.S.'s challenge to the District Court's decision as it relates to their own rights under the IDEA. See <u>Winkelman ex. rel. Winkelman v. Parma City Sch. Dist.</u>, 550 U.S. 516, 535 (2007); <u>see also</u> <u>Chambers ex rel. Chambers v. Sch. Dist. of Phila.</u>, 587 F.3d 176, 183 (3d Cir. 2009) ("Under <u>Winkelman</u>, . . . parents undoubtedly have substantive rights under the IDEA that they may enforce by prosecuting claims brought under that statute on their own behalf.").

As the District Court concluded, the record supports the administrative ruling that the School District did not deny R.S. a FAPE in the least restrictive environment based on his placement in a self-contained autism classroom for math and language arts. The mainstreaming requirement of the IDEA requires placement in the least restrictive environment that will provide a child "with a meaningful educational benefit." <u>S.H.</u>, 336 F.3d at 265 (citation omitted). To determine whether a child has been placed in the least restrictive environment, this Court adopted a two-part test in <u>Oberti ex rel. Oberti v. Board of Education of Clementon School District</u>, 995 F.2d 1204, 1215 (3d Cir.1993). First, courts consider "whether education in the regular classroom, with the use of

6

supplementary aids and services, can be achieved satisfactorily." Id. Then, if a court

concludes that the child cannot be satisfactorily educated in a regular classroom with

supplementary aids and services, it must analyze "whether the school has included the

child in school programs with nondisabled children to the maximum extent appropriate"

by ensuring inclusion "with nondisabled students wherever possible." Id. at 1218.

In the District Court, Appellants argued that R.S. was not being educated in the

least restrictive environment.[3] In the first step of the Oberti analysis, courts consider:

"(1) the steps the school district has taken to accommodate the child in a regular

classroom; (2) the child's ability to receive an educational benefit from regular education;

and (3) the effect the disabled child's presence has on the regular classroom." T.R. v.

Kingwood Twp. Bd. of Educ., 205 F.3d 572, 579 (3d Cir. 2000).

The District Court first discussed the steps the School District took to

accommodate R.S. in the general education classroom. The School District conducted

multiple evaluations to assess R.S.'s needs, which showed his difficulty focusing,

significant behavioral issues that caused disruptions to other students, very minimal

---

[3] M.S. and N.S. make various arguments on appeal that they did not raise in their counseled summary judgment filings in the District Court. Absent exceptional circumstances (which are not present here), we do not consider new issues raised for the first time on appeal. See Jenkins v. Superintendent of Laurel Highlands, 705 F.3d 80, 88 n.12 (3d Cir. 2013). Accordingly, we discuss the issue they raised below — whether the School District denied R.S. a FAPE in the least restrictive environment by recommending his placement in the self-contained autism classroom for his language arts and math classes.

social interaction with other students, and need for continuous prompting, food incentives, and encouragement from his aide and others to participate. The School District provided a one-to-one aide, curriculum modifications, and an iPad to help with R.S.'s communication needs until his AAC device was approved, as well as speech, physical, and occupational therapy. R.S.'s teachers also met and collaborated with each other to work on modifying R.S.'s curriculum appropriately. Appellants' experts testified that School District staff could be trained to use additional strategies to modify the curriculum to support R.S. in the general education classroom.

Next, the District Court considered R.S.'s ability to receive an educational benefit from the general education classroom. R.S.'s teachers testified about his classroom behaviors in the general education class, noting that he did not interact with other students, often engaged in disruptive activities, used his AAC device primarily to request food, and did not participate without significant prompting from his aide. Other School District staff who conducted evaluations agreed that R.S. was only minimally interacting with his peers in either setting unless prompted by his aide. However, R.S.'s teacher in the self-contained classroom believed that he was making progress and able to keep focus with prompting and guidance in her class. One of appellants' experts testified that when she observed R.S. at school over the course of three hours on one school day, she saw him meaningfully participating in the general education lessons, although she did not see him having much social interaction with the other students. Appellants' other expert who

8

observed R.S. testified that she saw R.S. interacting with his peers to some extent and that she felt he was participating in class activities.

Finally, the District Court considered the effect of R.S.'s presence in the general education classroom. School District staff testified that R.S. engaged in disruptive behaviors throughout the day, with episodes of aggression, throwing objects, crying, yelling, throwing his body onto the floor, removing his shoes and socks, mouthing inedible objects, leaving his seat, and touching peers, among other challenging behaviors. One staff member testified to seeing fewer disruptive behaviors in the self-contained classroom than in the general education environment. Appellants' experts both testified that during their observation periods, they did not see any behavioral issues that they believed would be unduly disruptive.

Considering these factors, we conclude that the District Court did not clearly err in determining that it was not possible for R.S. to have been educated entirely in the general education classroom. Appellants argue that this conclusion was improper because the School District had not implemented every possible support for R.S. before moving him to the self-contained autism classroom for a larger portion of his day. They point to recommendations by one of their experts that they believe would allow R.S. to be educated entirely in the general education setting — particularly, additional training for the teaching staff.

However, along with the other supplementary supports he received, R.S. was

taught by trained special education teachers, assisted by an aide, and his teachers testified to doing additional research on how to support R.S. and working with each other to modify his lessons and meet his needs. See Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley, 458 U.S. 176, 199 (1982) (concluding that the IDEA does not mandate "the furnishing of every special service necessary to maximize each handicapped child's potential"); Hartmann by Hartmann v. Loudoun Cnty. Bd. of Educ., 118 F.3d 996, 1004 (4th Cir. 1997) (noting that "the IDEA . . . does not require special education service providers to have every conceivable credential relevant to every child's disability"). The record thus supports the District Court's conclusion at the first step of the Oberti analysis.

Turning to the second step, we agree with the District Court's finding that R.S. was mainstreamed to the maximum extent possible. For more than half of the school day — morning meeting, science, social studies, special classes, gym, lunch, and recess, as well as for special events and class parties — R.S. was with his non-disabled peers. Accordingly, we discern no error in the District Court's conclusion that R.S. was not denied a FAPE in the least restrictive environment and that summary judgment on M.S. and N.S.'s IDEA claims was appropriate.

For these reasons, we will affirm the judgment of the District Court.

10